# GULF, COLORADO AND SANTA FÉ RAILWAY COMPANY *v.* ELLIS.

## ERROR TO THE SUPREME COURT OF THE STATE OF TEXAS.

No. 133. Submitted November 3, 1896. — Decided January 18, 1897.

The act of the legislature of Texas of April 5, 1889, which provides that "any person in this State having a valid *bona fide* claim for personal services rendered or labor done, or for damages, or for overcharges on freight, or claims for stock killed or injured by the train of any railway

company, provided that such claim for stock killed or injured shall be presented to the agent of the company nearest to the point where such stock was killed or injured, against any railway corporation operating a railroad in this State, and the amount of such claim does not exceed $50, may present the same, verified by his affidavit, for payment to such corporation by filing it with any station agent of such corporation in any county where suit may be instituted for the same, and if, at the expiration of thirty days after such presentation, such claim has not been paid or satisfied, he may immediately institute suit thereon in the proper court; and if he shall finally establish his claim, and obtain judgment for the full amount thereof, as presented for payment to such corporation in such court, or any court to which the suit may have been appealed, he shall be entitled to recover the amount of such claim and all costs of suit, and in addition thereto all reasonable attorney's fees, provided he has an attorney employed in his case, not to exceed $10, to be assessed and awarded by the court or jury trying the issue," operates to deprive the railroad companies of property without due process of law, and denies to them the equal protection of the law, in that it singles them out of all citizens and corporations, and requires them to pay in certain cases attorney's fees to the parties successfully suing them, while it gives to them no like or corresponding benefit.

The mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the Fourteenth Amendment, and in all cases it must appear not merely that a classification has been made, but also that it is based upon some reasonable ground — something which bears a just and proper relation to the attempted classification, and is not a mere arbitrary selection. Tested by these principles the statute in controversy cannot be sustained.

On April 5, 1889, the legislature of the State of Texas passed this act:

"Section 1. *Be it enacted by the legislature of the State of Texas,* That after the time when this act shall take effect, any person in this State having a valid *bona fide* claim for personal services rendered or labor done, or for damages, or for overcharges on freight, or claims for stock killed or injured by the train of any railway company, provided that such claims for stock killed or injured shall be presented to the agent of the company nearest to the point where such stock was killed or injured, against any railway corporation operating a railroad in this State, and the amount of such claim does not exceed $50, may present the same, verified by his affidavit, for payment to such corporation by filing

it with any station agent of such corporation in any county where suit may be instituted for the same, and if, at the expiration of thirty days after such presentation, such claim has not been paid or satisfied, he may immediately institute suit thereon in the proper court; and if he shall finally establish his claim, and obtain judgment for the full amount thereof, as presented for payment to such corporation in such court, or any court to which the suit may have been appealed, he shall be entitled to recover the amount of such claim and all costs of suit, and in addition thereto all reasonable attorney's fees, provided he has an attorney employed in his case, not to exceed $10, to be assessed and awarded by the court or jury trying the issue." Sayles' Supplement to Texas Civil Statutes, p. 768, Art. 4266a.

On October 9, 1890, defendant in error commenced this action before a justice of the peace, to recover $50 for a colt killed by the railway company. The complaint alleged presentation and non-payment, as required by the act, and demanded $10 attorney fee. The company answered admitting everything except the claim for the attorney's fee. The case passed, after judgment in favor of the plaintiff for the amount claimed and an attorney's fee of $10, through the District Court and the Court of Civil Appeals, to the Supreme Court of the State, by which, on May 10, 1894, the judgment against the company was affirmed. 87 Texas, 19. To reverse such judgment the company sued out this writ of error.

*Mr. E. D. Kenna* and *Mr. J. W. Terry* for plaintiff in error.

No appearance for defendant in error.

Mr. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The single question in this case is the constitutionality of the act allowing attorney's fees. The contention is that it operates to deprive the railroad companies of property with-

out due process of law, and denies to them the equal protection of the law, in that it singles them out of all citizens and corporations, and requires them to pay in certain cases attorney's fees to the parties successfully suing them, while it gives to them no like or corresponding benefit. Only against railroad companies is such exaction made, and only in certain cases.

We have not been favored with any argument or brief from the defendant in error. Doubtless he believed, and justly, that nothing could be added to the arguments so fully and strongly made in support of the constitutionality of this law in the respective opinions of the two highest courts of the State.

The Supreme Court of the State considered this statute as a whole and held it valid, and as such it is presented to us for consideration. Considered as such, it is simply a statute imposing a penalty upon railroad corporations for a failure to pay certain debts. No individuals are thus punished, and no other corporations. The act singles out a certain class of debtors and punishes them when for like delinquencies it punishes no others. They are not treated as other debtors, or equally with other debtors. They cannot appeal to the courts as other litigants under like conditions and with like protection. If litigation terminates adversely to them, they are mulcted in the attorney's fees of the successful plaintiff; if it terminates in their favor, they recover no attorney's fees. It is no sufficient answer to say that they are punished only when adjudged to be in the wrong. They do not enter the courts upon equal terms. They must pay attorney's fees if wrong; they do not recover any if right; while their adversaries recover if right and pay nothing if wrong. In the suits, therefore, to which they are parties they are discriminated against, and are not treated as others. They do not stand equal before the law. They do not receive its equal protection. All this is obvious from a mere inspection of the statute.

It is true the amount of the attorney's fee which may be charged is small, but if the State has the power to thus mulct them in a small amount it has equal power to do so in a larger sum. The matter of amount does not determine the question

of right, and the party who has a legal right may insist upon it, if only a shilling be involved. As well said by Mr. Justice Bradley in *Boyd* v. *United States*, 116 U. S. 616, 635 : " Illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizens and against any stealthy encroachments thereon. Their motto should be *obsta principiis*."

While good faith and a knowledge of existing conditions on the part of a legislature is to be presumed, yet to carry that presumption to the extent of always holding that there must be some undisclosed and unknown reason for subjecting certain individuals or corporations to hostile and discriminating legislation is to make the protecting clauses of the Fourteenth Amendment a mere rope of sand, in no manner restraining state action.

It is well settled that corporations are persons within the provisions of the Fourteenth Amendment of the Constitution of the United States. *Santa Clara County* v. *Southern Pacific Railroad*, 118 U. S. 394 ; *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 181, 189 ; *Missouri Pacific Railway* v. *Mackey*, 127 U. S. 205; *Minneapolis & St. Louis Railway* v. *Herrick*, 127 U. S. 210; *Minneapolis & St. Louis Railway* v. *Beckwith*, 129 U. S. 26 ; *Charlotte & Columbia Railroad* v. *Gibbes*, 142 U. S. 386; *Covington & Lexington Turnpike Company* v. *Sandford*, 164 U. S. 578. The rights and securities guaranteed to persons by that instrument cannot be disregarded in respect to these artificial entities called corporations any more than they can be in respect to the individuals who are the equitable owners of the property belonging to such corporations. A State has no more power to deny to corporations the equal protection of the law than it has to individual citizens.

But it is said that it is not within the scope of the Fourteenth Amendment to withhold from States the power of classification, and that if the law deals alike with all of a certain class it is not obnoxious to the charge of a denial of equal protection. While, as a general proposition, this is undeniably true, *Hayes* v. *Missouri*, 120 U. S. 68; *Railroad Company* v. *Mackey*, 127 U. S. 205; *Walston* v. *Nevin*, 128 U. S. 578; *Bell's Gap Railroad* v. *Pennsylvania*, 134 U. S. 232; *Pacific Express Co.* v. *Seibert*, 142 U. S. 339; *Giozza* v. *Tiernan*, 148 U. S. 657; *Columbia Southern Railway* v. *Wright*, 151 U. S. 470; *Marchant* v. *Pennsylvania Railroad*, 153 U. S. 380; *St. Louis & San Francisco Railway* v. *Mathews*, 165 U. S. 1; yet it is equally true that such classification cannot be made arbitrarily. The State may not say that all white men shall be subjected to the payment of the attorney's fees of parties successfully suing them and all black men not. It may not say that all men beyond a certain age shall be alone thus subjected, or all men possessed of a certain wealth. These are distinctions which do not furnish any proper basis for the attempted classification. That must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis.

As well said by Black, J., in *State* v. *Loomis*, 115 Missouri, 307, 314, in which a statute making it a misdemeanor for any corporation engaged in manufacturing or mining to issue in payment of the wages of its employés any order, check, etc., payable otherwise than in lawful money of the United States, unless negotiable and redeemable at its face value in cash or in goods and supplies at the option of the holder at the store or other place of business of the corporation, was held class legislation and void: "Classification for legislative purposes must have some reasonable basis upon which to stand. It must be evident that differences which would serve for a classification for some purposes furnish no reason whatever for a classification for legislative purposes. The differences which will support class legislation must be such as in the nature of things furnish a reasonable basis for separate laws and regula-

tions.    Thus the legislature may fix the age at which persons
shall be deemed competent to contract for themselves, but no
one will claim that competency to contract can be made to de-
pend upon stature or color of the hair.    Such a classification
for such a purpose would be arbitrary and a piece of legislative
despotism, and therefore not the law of the land."

In *Vanzant* v. *Waddel*, 2 Yerger, 260, 270, Catron, J., (after-
wards Mr. Justice Catron of this court,) speaking for the Su-
preme Court of Tennessee, declared: "Every partial or private
law, which directly proposes to destroy or affect individual
rights, or does the same thing by affording remedies leading
to similar consequences, is unconstitutional and void.    Were
this otherwise, odious individuals and corporate bodies would
be governed by one rule, and the mass of the community, who
made the law, by another." ·

In *Dibrell* v. *Morris' Heirs*, Supreme Court of Tennessee,
15 S. W. Rep. 87, 95, Baxter, Special Judge, reviewing at some
length cases of classification, closes the review with these words:
"We conclude, upon a review of the cases referred to above,
that, whether a statute be public or private, general or special,
in form, if it attempts to create distinctions and classifications
between the citizens of this State, the basis of such classifica-
tion must be natural and not arbitrary."

In *Bell's Gap Railroad* v. *Pennsylvania*, 134 U. S. 232, the
question was presented as to the power of the State to classify
for purposes of taxation, and while it was conceded that a large
discretion in these respects was vested in the various legisla-
tures, the fact of a limit to such discretion was recognized, the
court, by Mr. Justice Bradley, saying, on page 237: "All such
regulations, and those of like character, so long as they pro-
ceed within reasonable limits and general usage, are within
the discretion of the state legislature or the people of the State
in framing their constitution.    But clear and hostile discrimi-
nations against particular persons and classes, especially such
as are of an unusual character, unknown to the practice of our
governments, might be obnoxious to the constitutional prohi-
bition."

It is, of course, proper that every debtor should pay his

debts, and there might be no impropriety in giving to every successful suitor attorney's fees. Such a provision would bear a reasonable relation to the delinquency of the debtor, and would certainly create no inequality of right or protection. But before a distinction can be made between debtors, and one be punished for a failure to pay his debts, while another is permitted to become in like manner delinquent without any punishment, there must be some difference in the obligation to pay, some reason why the duty of payment is more imperative in the one instance than in the other.

If it be said that this penalty is cast only upon corporations, that to them special privileges are granted, and therefore upon them special burdens may be imposed, it is a sufficient answer to say that the penalty is not imposed upon all corporations. The burden does not go with the privilege. Only railroads of all corporations are selected to bear this penalty. The rule of equality is ignored.

It may be said that certain corporations are chartered for charitable, educational or religious purposes, and abundant reason for not visiting them with a penalty for the non-payment of debts is found in the fact that their chartered privileges are not given for pecuniary profit. But the penalty is not imposed upon all business corporations, all chartered for the purpose of private gain. The banking corporations, the manufacturing corporations and others like them are exempt. Further, the penalty is imposed not upon all corporations charged with the *quasi* public duty of transportation, but only upon those charged with a particular form of that duty. So the classification is not based on any idea of special privileges by way of incorporation, nor of special privileges given thereby for purposes of private gain, nor even of such privileges granted for the discharge of one general class of public duties.

But if the classification is not based upon the idea of special privileges, can it be sustained upon the basis of the business in which the corporations to be punished are engaged? That such corporations may be classified for some purposes is unquestioned. The business in which they are

engaged is of a peculiarly dangerous nature, and the legislature, in the exercise of its police powers, may justly require many things to be done by them in order to secure life and property. Fencing of railroad tracks, use of safety couplers, and a multitude of other things easily suggest themselves. And any classification for the imposition of such special duties — duties arising out of the peculiar business in which they are engaged — is a just classification, and not one within the prohibition of the Fourteenth Amendment. Thus it is frequently required that they fence their tracks, and as a penalty for a failure to fence double damages in case of loss are inflicted. *Missouri Pacific Railway* v. *Humes*, 115 U. S. 512. But this and all kindred cases proceed upon the theory of a special duty resting upon railroad corporations by reason of the business in which they are engaged — a duty not resting upon others; a duty which can be enforced by the legislature in any proper manner; and whether it enforces it by penalties in the way of fines coming to the State, or by double damages to a party injured, is immaterial. It is all done in the exercise of the police power of the State and with a view to enforce just and reasonable police regulations.

While this action is for stock killed, the recovery of attorney's fees cannot be sustained upon the theory just suggested. There is no fence law in Texas. The legislature of the State has not deemed it necessary for the protection of life or property to require railroads to fence their tracks, and as no duty is imposed, there can be no penalty for non-performance. Indeed, the statute does not proceed upon any such theory; it is broader in its scope. Its object is to compel the payment of the several classes of debts named, and was so regarded by the Supreme Court of the State.

But a mere statute to compel the payment of indebtedness does not come within the scope of police regulations. The hazardous business of railroading carries with it no special necessity for the prompt payment of debts. That is a duty resting upon all debtors, and while in certain cases there may be a peculiar obligation which may be enforced by penalties, yet nothing of that kind springs from the mere work of

railroad transportation.   Statutes have been sustained giving special protection to the claims of laborers and mechanics, but no such idea underlies this legislation.   It does not aim to protect the laborer or the mechanic alone, for its benefits are conferred upon every individual in the State, rich or poor, high or low, who has a claim of the character described.   It is not a statute for the protection of particular classes of individuals supposed to need protection, but for the punishment of certain corporations on account of their delinquency.

Neither can it be sustained as a proper means of enforcing the payment of small debts and preventing any unnecessary litigation in respect to them, because it does not impose the penalty in all cases where the amount in controversy is within the limit named in the statute.  Indeed, the statute arbitrarily singles out one class of debtors and punishes it for a failure to perform certain duties — duties which are equally obligatory upon all debtors; a punishment not visited by reason of the failure to comply with any proper police regulations, or for the protection of the laboring classes or to prevent litigation about trifling matters, or in consequence of any special corporate privileges bestowed by the State.   Unless the legislature may arbitrarily select one corporation or one class of corporations, one individual or one class of individuals, and visit a penalty upon them which is not imposed upon others guilty of like delinquency this statute cannot be sustained.

But arbitrary selection can never be justified by calling it classification.   The equal protection demanded by the Fourteenth Amendment forbids this.   No language is more worthy of frequent and thoughtful consideration than these words of Mr. Justice Matthews, speaking for this court, in Yick Wo v. Hopkins, 118 U. S. 356, 369 : " When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power."   The first official action of this nation declared the foundation of government in these words: " We hold these truths to be self-evident,

that all men are created equal, that they are endowed by their Creator with certain unalienable rights, that among these are life, liberty and the pursuit of happiness." While such declaration of principles may not have the force of organic law, or be made the basis of judicial decision as to the limits of right and duty, and while in all cases reference must be had to the organic law of the nation for such limits, yet the latter is but the body and the letter of which the former is the thought and the spirit, and it is always safe to read the letter of the Constitution in the spirit of the Declaration of Independence. No duty rests more imperatively upon the courts than the enforcement of those constitutional provisions intended to secure that equality of rights which is the foundation of free government.

Questions of this character have been frequently presented to the courts, and it is well to notice a few of the decisions. In Alabama a statute provided that a railroad corporation, or any complainant against it, taking an appeal from a judgment of a justice of the peace in a suit for damages to live stock, and failing to sustain such appeal, should be liable for a reasonable attorney's fee incurred by reason thereof. Code Alabama, 1876, § 1715. This statute was less obnoxious to the charge of discrimination than the one before us, in that it gave the same right to the corporation as to its adversary, and it was limited to cases in which an appeal was taken from a judgment already rendered by a competent judicial officer; yet the Supreme Court of that State, *South & North Alabama Railroad* v. *Morris*, 64 Alabama, 193, 199, held it in conflict with both the state and the Fourteenth Amendment to the United States Constitution, saying: "Justice cannot be sold or denied by the exaction of a pecuniary consideration for its enjoyment from one, when it is given freely and open-handed to another, without money and without price. Nor can it be permitted that litigants shall be debarred from the free exercise of this constitutional right by the imposition of arbitrary, unjust and odious discriminations, perpetrated under color of establishing peculiar rules for a particular occupation. Unequal, partial and discriminatory legislation, which secures this right to

some favored class or classes and denies it to others, who are thus excluded from that equal protection designed to be secured by the general law of the land, is in clear and manifest opposition to the letter and spirit of the foregoing constitutional provisions." - And again: "The section of the code under consideration (1715) prescribes a regulation of a peculiar and discriminative character in reference to certain appeals from justices of the peace. It is not general in its provisions or applicable to all persons, but is confined to such as own or control railroads only; and it varies from the general law of the land by requiring the unsuccessful appellant, in this particular class of cases, to pay an attorney's tax fee not to exceed twenty dollars. A law which would require all farmers who raise cotton to pay such a fee in cases where cotton was the subject-matter of litigation and the owners of this staple were parties to the suit would be so discriminating in its nature as to appear manifestly unconstitutional; and one which should confine the tax alone to physicians or merchants or ministers of the gospel would be glaring in its obnoxious repugnancy to those cardinal principles of free government which are found incorporated, perhaps, in the bill of rights of every state constitution of the various commonwealths of the American Government."

In Mississippi an act somewhat similar in its nature, Laws Miss. 1882, p. 110, was adjudged unconstitutional, *Chicago, St. Louis &c. Railroad* v. *Moss*, 60 Mississippi, 641, the court saying, on page 646: "The right of appeal cannot be fettered and clogged with reference to the parties litigant or the attitude they occupy as plaintiff or defendant. All litigants, whether plaintiff or defendant, should be regarded with equal favor by the law, and before the tribunals for administering it, and should have the same right to appeal with others similarly situated. All must have the equal protection of the law, and its instrumentalities. The same rule must exist for all in the same circumstances."

In Michigan a statute was passed, Laws Michigan, 1885, c. 234, authorizing the taxing of an attorney's fee of twenty-five dollars in actions against a railroad company for damages for

cattle killed, and the Supreme Court of that State held it unconstitutional, *Wilder* v. *Chicago & West Michigan Railway*, 70 Michigan, 382, saying on page 384 : "Corporations have equal rights with natural persons as far as their privileges in the courts are concerned. They can sue and defend in all courts the same as natural persons, and the law must be administered as to them with the same equality and justice which it bestows upon every suitor, and without which the machinery of the law becomes the engine of tyranny. This statute proposes to punish a railroad company for defending a suit brought against it with a penalty of $25, if it fails to successfully maintain its defence. The individual sues for the loss of his cow, and if it is shown that such loss was occasioned by his own neglect, and through no fault of the company, and he thereby loses his suit, the railroad company can recover only the ordinary statutory costs of $10 in the justice's court, but if he succeeds because of the negligence of the company, the plaintiff is permitted to tax the $10 and an additional penalty of $25 ; for it is nothing more or less than a penalty. Calling it an 'attorney's fee' does not change its real nature or effect. It is a punishment to the company, and a reward to the plaintiff, and an incentive to litigation on his part. . This inequality and injustice cannot be sustained upon any principle known to the law. It is repugnant to our form of government, and out of harmony with the genius of our free institutions. The legislature cannot give to one party in litigation such privileges as will arm him with special and important pecuniary advantages over his antagonist." *Lafferty* v. *Chicago & West Michigan Railway*, 71 Michigan, 35.

So, in Arkansas, an act was passed providing that when stock was killed by a railroad company the owner might demand an appraisement, and that if the appraised value was not paid within a certain time and an action was brought an attorney's fee for the plaintiff might be taxed and collected, but it was held by the Supreme Court, *St. Louis &c. Railway* v. *Williams*, 49 Arkansas, 492, that such legislation could not be sustained. It was construed to be an act imposing a pen-

alty for a failure to abide by an award of appraisers and contesting its validity in the courts. It is worthy of note that in the same volume is found a decision by the same court, sustaining a statute allowing an attorney's fee in actions for the recovery of overcharges by railroads, *Dow* v. *Beidelman*, 49 Arkansas, 455; but the statute had prescribed the rates of charge for the carriage of passengers by railroads, had forbidden an overcharge, and it was as a penalty for failure to comply with such police regulations that the allowance of an attorney's fee was sustained. See also *Jolliffe* v. *Brown*, Supreme Court of Washington, 14 Wash. 155, in which, it appearing that there was no statutory obligation on railroad companies to fence their right of way, a statute allowing attorney's fees in actions to recover damages for stock killed, was declared to be unconstitutional; and *Grand Rapids Chair Co.* v. *Runnels*, 77 Michigan, 104, in which an act authorizing an attorney's fee to be taxed in entering judgments for personal services was set aside.

Besides these cases involving attorney's fees are others in which legislation imposing special burdens on an individual or a class has been declared beyond the power of the legislature as against equality of right. In *San Antonio &c. Railway* v. *Wilson*, 19 S. W. Rep. 910, the Court of Appeals of Texas held that a statute providing that in the event of a railroad company's refusing to pay its indebtedness to an employé within twenty days after demand, he could recover as damages twenty per cent in addition to the amount due, was class legislation and unconstitutional. In the course of the opinion, after referring to those statutes allowing double damages for stock killed, the court observed: "But when we consider the relations of railway companies to their own servants, both as to contracts of employment and payment, we find a field in which special legislation has no right ordinarily to enter, and in which railways stand on the same footing with all other corporations or persons." In *Atchison & Nebraska Railroad* v. *Baty*, 6 Nebraska, 37, there was presented for consideration a statute which gave to the owner of live stock accidentally killed or destroyed on a railroad track

double its value, and it was held that the statute was void. *Millet* v. *People*, 117 Illinois, 294, in which an act of the legislature requiring owners and operators of coal mines to weigh coal in a certain specified manner, was held invalid as beyond the power of the legislature to single out certain individuals and impose upon them burdens not imposed upon all. *Frorer* v. *People*, 141 Illinois, 171, where an act which prohibited persons engaged in mining or manufacturing from keeping a store for furnishing supplies to their employés was held in conflict with the constitution. *Braceville Coal Co.* v. *People*, 147 Illinois, 66, where a like ruling was made in respect to a statute requiring certain specified corporations to pay the wages of their employés weekly. *Eden* v. *People*, 161 Illinois, 296, which set aside a statute forbidding barbers, and barbers only, to keep open their shops or work at their trade on Sundays. *Durkee* v. *Janesville*, 28 Wisconsin, 464, in which an act providing that no costs should be recovered against the city in an action commenced to set aside any assessment or tax deed, or to prevent the collection of taxes in said city, was held to conflict with the rule of equality in that suitors in all other cases were entitled to recover their costs, the court saying, on page 471, that "it is obvious there can be no certain remedy in the laws, where the legislature may prescribe one rule for one suitor or class of suitors in the courts, and another for all others under like circumstances, or may discriminate between parties to the same suit, giving one most unjust pecuniary advantage over the other. Parties thus discriminated against would not obtain justice freely, and without being obliged to purchase it. To the extent of such discrimination they would be obliged to buy justice and pay for it, thus making it a matter of purchase to those who could afford to pay, contrary to the letter and spirit of this provision." *Janesville* v. *Carpenter*, 77 Wisconsin, 288, in which a statute authorizing suits for injunction to be maintained in favor of certain parties under circumstances differing from those which obtained in respect to all other suits of a similar nature, was likewise held to be void, as discriminating and class legislation, in

violation of the spirit of the Constitution, and contrary to public justice.

In *State* v. *Goodwill*, 33 West Va. 179, the Supreme Court of Appeals of West Virginia held unconstitutional a statute which prohibited persons engaged in mining and manufacturing from issuing for the payment of labor any order or paper except such as was specified in the act; and on the same day in *State* v. *Fire Creek Coal & Coke Co.*, 33 West Va. 188, the same court also set aside another statute which prohibited persons and corporations engaged in mining and manufacturing, and interested in selling merchandise and supplies, from selling any merchandise or supplies to their employés at a greater per cent of profit than they sell to others not employed by them. In *Park* v. *The Free Press Co.*, 72 Michigan, 560, it was held that an act limiting the recovery in suits brought for libel in certain cases to actual damages, as defined in the act, was not within the scope of constitutional legislation. In *Pearson* v. *Portland*, 69 Maine, 278, a statute, which provided that no damages for injury to person or property caused by a defect in the highway, could be recovered of any city or town by any person who, at the time the damage was done, was a resident of any country where damage done under similar circumstances was not by the laws of that country recoverable, was held to conflict with the equality clause of the Fourteenth Amendment of the United States Constitution.

It must not be understood that by citing we endorse all these decisions. Our purpose is rather to show the extent to which the courts of the various States have gone in enforcing the constitutional obligation of equal protection. Other cases of a similar character may be found in the reports, but a mere accumulation of authorities is of little value. It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the Fourteenth Amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground — some difference which bears a just and proper relation to the attempted classification —

and is not a mere arbitrary selection. Tested by these principles the statute in controversy cannot be sustained. The judgment of the Supreme Court of Texas is, therefore,

*Reversed, and the case is remanded for further proceedings not inconsistent with this opinion.*

MR. JUSTICE GRAY, with whom concurred MR. CHIEF JUSTICE FULLER and MR. JUSTICE WHITE, dissenting.

The Chief Justice, Mr. Justice White and myself are unable to concur in this judgment. The grounds of our dissent may be briefly stated.

Costs in civil actions at law are the creature of statute. From early times, there have been statutes making different rules as to costs, according to the nature of the issue, and the amount involved; and sometimes allowing costs to the prevailing party when plaintiff, and not when defendant. The whole matter of costs, including the party to or against whom they may be given, the items or sums to be allowed, and the right to costs as depending upon the nature of the suit, upon the amount or value of the thing sued for or recovered, or upon other circumstances, is and always has been within the regulation and control of the legislature, exercising its discretionary power, not oppressively to either party, but as the best interests of the litigants and of the public may appear to it to demand. Bac. Ab., Costs, *passim; Postan* v. *Stanway*, 5 East, 261; *Green* v. *Liter*, 8 Cranch, 229, 242; *Kneass* v. *Schuylkill Bank*, 4 Wash. C. C. 106; *Lowe* v. *Kansas*, 163 U. S. 81.

The statute of the State of Texas, now in question, does but enact that any person having a valid *bona fide* claim, not exceeding fifty dollars, against a railroad corporation, for personal services or damages, or for overcharges on freight, or for destruction or injury of stock by its trains, and presenting the claim, verified by his affidavit, to the corporation, and, if it is not paid within thirty days, suing thereon in the proper court, and finally obtaining judgment for the full amount thereof in that court, or in any court to which the suit may be appealed, shall be entitled to recover, in addition to other

costs, a reasonable attorney's fee (if he has employed an attorney) not exceeding ten dollars, to be assessed and awarded by the court or jury trying the issue.   Texas Gen. Laws of 1889, c. 107, p. 131; Sayles's Supplement, art 4266*a*, p. 768.   In other words, if an honest claim, of not more than fifty dollars, and coming within one of those classes of small claims which most commonly arise between individuals and railroad corporations, is not promptly paid when presented under oath, and the claimant is thereby compelled to resort to a suit, the corporation, if ultimately cast in the suit, must pay to the successful plaintiff a very moderate attorney's fee, as part of the costs of the litigation.

The legislature of a State must be presumed to have acted from lawful motives, unless the contrary appears upon the face of the statute.   If, for instance, the legislature of Texas was satisfied, from observation and experience, that railroad corporations within the State were accustomed, beyond other corporations or persons, to unconscionably resist the payment of such petty claims, with the object of exhausting the patience and the means of the claimants, by prolonged litigation and perhaps repeated appeals, railroad corporations alone might well be required, when ultimately defeated in a suit upon such a claim, to pay a moderate attorney's fee, as a just, though often inadequate, contribution to the expenses to which they had put the plaintiff in establishing a rightful demand. Whether such a state of things as above supposed did in fact exist, and whether, for that or other reasons, sound policy required the allowance of such a fee to either party, or to the plaintiff only, were questions to be determined by the legislature, when dealing with the subject of costs, except in so far as it saw fit to commit the matter to the decision of the courts.

The constitutionality of statutes allowing plaintiffs only to recover an attorney's fee, as part of the judgment, in particular classes of actions selected by the legislature, appears to have been upheld by the courts of most of the States in which it has been challenged.   *Kansas Pacific Railway* y. *Mower*, 16 Kansas, 573, 582; *Same* v. *Yanz*, 16 Kansas, 583; *Peoria &c.*

*Railway* v. *Duggan*, 109 Illinois, 537; *Vogel* v. *Pekoc*, 157 Illinois, 339; *Dow* v. *Beidelman*, 49 Arkansas, 455; *Perkins* v. *St. Louis &c. Railway*, 103 Missouri, 52; *Burlington &c. Railway* v. *Dey*, 82 Iowa, 312, 340; *Wortman* v. *Kleinschmidt*, 12 Montana, 316; *Gulf, Colorado & Santa Fé Railroad* v. *Ellis*, 87 Texas, 19; *Cameron* v. *Chicago &c. Railway*, 63 Minn. 384.

It is to be regretted that so important a precedent, as this case may afford, for interference by the national judiciary with the legislation of the several States on little questions of costs, should be established upon argument *ex parte* in behalf of the railroad corporation, without any argument for the original plaintiff. But it is hardly surprising that the owner of a claim for fifty dollars only, having been compelled to follow up, through all the courts of the State, the contest over this ten dollar fee, should at last have become discouraged, and unwilling to undergo the expense of employing counsel to maintain his rights before this court.