Sherwood E. Davis, J.
On July 28, 1968, the above-named defendant and seven others were issued uniform traffic tickets by the New York State Police on the New York State Thruway for violating section 103.1 of the Bules and Begulations for the use and occupancy of the Thruway system (21 NYCRR 103.1), in that they failed to comply with sign which read “ Closed to Charter Buses — Midnight Friday to Midnight Sunday ”. This sign in July of 1968 was the uniform sign used at or near the service areas on the New York State Thruway between New York City and Albany.
The issues were tried before me on October 25, 1968, and I find the defendants not guilty of violating section 103.1 of the Thruway Bules and Begulations, which section reads as follows: “ Section 103.1 Obedience to officers, signs and signals. No person shall fail, neglect or refuse to comply with any order of a member of the State Police, the collectors at toll booths at interchanges and barriers, flagmen of the maintenance forces, and such uniformed officers as may be employed by the Thruway Authority for such purposes. No person shall fail, neglect or refuse to comply with any traffic control sign, signal or device erected or displayed by the Thruway Authority on the Thruway System, unless directed otherwise by a member of the State Police or Thruway Authority employee.”
The creation and the powers of the Thruway Authority are contained in section 353 of the Public Authorities Law, which reads: “ § 353. Purposes of the authority and benefits therefrom. The authority is created to and shall have power to construct, reconstruct, improve, maintain or operate a thruway *265 system as provided by this title together with facilities for the public incidental thereto. It is hereby found and declared that such purposes are in all respects for the benefit of the people of the state of New York for the increase of their pleasure, convenience and welfare, for the improvement of their health, to facilitate transportation for their recreation and commerce and for the common defense; and the authority shall be regarded as performing a governmental function in carrying out its corporate purpose and in exercising the powers granted by this title.”
Pursuant to section 353 afore-mentioned, the Authority, by Resolution 715, on May 11,1965 adopted the following resolution:
‘ ‘ Approving Restriction of Charter Buses at Sloatsburg and Ramapo Service Areas: resolved, that the General Manager be, and hereby is, authorized to close the Ramapo and Sloatsburg Service Areas to charter buses on holidays and weekends from Friday noon to Monday noon, effective Friday, May 28, 1965, and ending September 27, 1965, and for comparable periods during the touring season which includes from Memorial Day through Labor Day in succeeding years.” And in May of 1966, amended Resolution 715 as follows: 11 Amending Resolution No. 715 Restricting Charter Buses: resolved, That Resolution No. 715 adopted at Meeting No. 198, held on May 21, 1965, be and the same hereby is, amended to authorize the General Manager to close any or all Thruway Service Areas to charter buses, at any time and for any period, when in his judgment conditions require such action.”
On July 16, 1968 the resolution of 1966 was acted upon by closing all service areas to charter buses on the New York State Thruway between New York City and Albany — northbound and southbound — some eight service areas in all. It is to this restriction that we address ourselves.
The Authority contends that the law is well settled that where there has been a reasonable exercise of judgment, the courts will not substitute its judgment for that of the board, commission or Authority. The court disagrees with that contention. Learned counsel for the defendants contended that under section 354 of the Public Authorities Law, the Authority failed to file Resolution 715 and amendments thereto with the Secretary of State. The Authority does not claim that they did file them, but the court is not directing itself to this technical consideration and objection. It mentions it only to demonstrate that the issue herein involved and with which we concern ourselves is more basic, fundamental and constitutional than procedural.
*266 It appears very dramatically to the writer that the basic issue is whether or not the resolutions adopted by the Authority referred to (supra) pursuant to section 103.1 of the Rules and Regulations of the Thruway System violate the principal guarantee of equality applicable in New York under the Fourteenth Amendment to the Federal Constitution which provides that no State shall “ deny to any person within its jurisdiction the equal protection of the laws ”. This language is essentially the same as that of section 11 of article I of the New York Constitution, which states that “No person shall be denied equal protection of the laws of this state or any subdivision thereof”. The constitutional provisions (supra) extend the protection to all persons without regard to race, color, or class, and prohibit any State legislation which in effect denies to any ráce, class or individual the equal protection of the laws. (See Truax v. Corrigan, 257 U. S. 312.) It has been held, and rightly so, that a provision not objectionable on its face may be adjudged unconstitutional because of its effect and operation (East Coast Lbr. Term. v. Town of Babylon, 174 F. 2d 106) and every State official, high or low, is bound by the Fourteenth Amendment (United States v. Raines, 362 U. S. 17).
We have before us a regulation which denies charter buses and the passengers the use of restaurant, rest rooms and parking facilities on weekends between New York and Albany between Memorial Day and Labor Day.
I find that the basis, Resolution No. 715 and amendments thereto giving the Authority the right to close said facilities, is unconstitutional, not on the ground of race, color or natural origin, but on the basis that this hostile legislation discriminates against charter buses in contrast with private cars, regular route buses, trucks and buses belonging to private corporations or associations that transport their own members, etc. The regulation in question is not directed at “buses” because of any particular objectionable feature, because clearly they are permitted to use -the Thruway; all pronouncements by the Thruway Authority point to the objection being to the great numbers of passengers who invade the Thruway rest facilities and thereby overtax their capacity. In this respect, the classification is discriminatory, because it distinguishes between users who ride by charter motor bus as against all others. Supreme Court rulings on the issue are contained in Truax v. Corrigan (supra) wherein on page 337, the court said that classification must be reasonable and this classification: “ ‘ Must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification *267 is proposed, and can never "be made arbitrarily and without such basis.’ ”
The court in Truax v. Corrigan referred to the case of Gulf, Colorado & Santa Fe Ry. Co. v. Ellis (165 U. S. 150, 154) wherein the court stated: “ ‘ Illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizens and against any stealthy encroachments thereon. ’ ”
A regulation cannot create an unreasonable classification nor can such regulation be arbitrary. Arbitrary selection can never be justified by calling it a “ classification”. The regulation here in question does not operate uniformly on all members of the class; i.e., buses. It discriminates against a part of the class. Therefore, equal protection of the laws is denied when all persons in the same class are not treated alike under like circumstances and conditions, both in the privilege conferred and liabilities imposed. (Matter of Sacharoff v. Corsi, 294 N Y 305.) A law which required private motor carriers to obtain certificates of convenience and necessity and to furnish security for the protection of the public was held invalid by reason of the exemption of carriers of fish, farm and dairy products. (Smith v. Cahoon, 283 U. S. 553.) Discrimination among dealers who entered business after a specified date is arbitrary and unlawful. (Mayflower Farms v. Ten Eyck, 297 U. S. 266.) A regulation such as the one in question which vests in supervisory authorities a naked and arbitrary power constitutes a denial of equal protection of the law. Legislation which singles out one of a class for special burdens and obligations, subjecting him to certain liabilities from which all others are exempted, denies equal protection of the laws. (Matter of Decker v. Pouvailsmith Corp., 252 N. Y. 1.)
Therefore, it is held that the regulation is unconstitutional under the Fourteenth Amendment to the United States Constitution and section 11 of article I of the New York State Constitution ; that the regulation barring charter buses as aforesaid is an abuse of administrative discretion in that it is too broad and that the classification is arbitrary, unfair and discriminatory. The problems inherent in the management of a thruway *268 system are many and onerous no doubt, but these problems, which are ever present, must be solved by the Authority, but not at the expense of the rights of the users of the facilities. Accordingly, the informations herein are dismissed.