No. 71–6489. MCLAMORE v. SOUTH CAROLINA ET AL. Sup. Ct. S. C. Certiorari denied.

MR. JUSTICE DOUGLAS, dissenting.

I vote to hear this case because of the importance of the question raised.

A prisoner sentenced in the State of South Carolina, in any case in which confinement is the punishment, can be sent (1) to a county to work on its chain gang (if the county maintains one) (2) or in the alternative to the Department of Corrections and then to the local jail

or state penitentiary.[1] Under the statute, an elected official, the County Supervisor, makes the choice. There are no statutory criteria by which he is to make his choice.

Petitioner was sentenced under S. C. Code Ann. § 17–554 and assigned to the chain gang of Richland County, South Carolina. Under the Post Conviction Relief Statute of South Carolina he sought review of two questions: (1) whether the chain gang was cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, and (2) whether the sending of certain prisoners to the penitentiary where some rehabilitative services are available and others to the chain gang where none exists is a denial of equal protection of the laws under the Fourteenth Amendment.

On April 28, 1971, the relief in both areas was denied and the decision was affirmed by the Supreme Court of South Carolina, 257 S. C. 413, 186 S. E. 2d 250 (1972). The case is here on certiorari.

The delineation of just what conditions constitute cruel and unusual punishment is not well defined. But we know from *Weems* v. *United States,* 217 U. S. 349 (1910), that the concept is not rigid but progressive; that it acquires meaning as the public becomes enlightened.

---

[1] S. C. Code Ann. § 17–554 (1962):

"Able-bodied male convicts to work on county or municipal chain gangs.—In every case in which imprisonment is provided as the punishment, in whole or in part, for any crime, all able-bodied male convicts shall be sentenced to hard labor on the public works of the county in which convicted, if such county maintains a chain gang, without regard to the length of service, and in the alternative to imprisonment in the county jail or State Penitentiary at hard labor. . . . In any case the presiding judge shall have the power, by special order, to direct that any person convicted before him be confined in the State Penitentiary if it is considered unsafe or unwise for such convict to be committed to the county chain gang."

Whether the exclusion of women raises an equal protection claim is not raised by the present petition.

*Id.,* at 378.   As Mr. Chief Justice Warren said, "the words
of the Amendment are not precise, and . . . their scope is
not static.   The Amendment must draw its meaning from
the evolving standards of decency that mark the progress
of a maturing society" *Trop* v. *Dulles,* 356 U. S. 86, 100–
101 (1958).

Does the chain gang fit into our current concept of
penology?   If not, does it violate the Eighth Amend-
ment?   This is an important question never decided by
the Court.

The second point is of equal importance.   South Car-
olina creates two classes of prisoners, those who work on
the chain gang, and those who are sent to the peniten-
tiary.   The latter are under the Department of Correc-
tions and have counseling, psychiatric service, and edu-
cational and vocational programs, although no peni-
tentiary has all the programs that are available within
the system.   Those assigned to the chain gang have
none of the rehabilitative services made available by
the Corrections Department.   As I have said, there
are no statutory standards for the County Supervisor to
use in determining where each man goes; the decision is
entirely within his discretion to treat one type of of-
fender differently from another though the two are in the
same class, and though each be found guilty of the same
crime and sentenced to serve the same number of years.

A State can, of course, create different classes of pris-
oners and treat them differently as long as those classes
are created for legitimate state aims.   And if the basis
on which groups so defined bears a reasonable relation to
the purpose, the class will survive.   See *Gulf, C. & S. F.
R. Co.* v. *Ellis,* 165 U. S. 150, 158.   The courts must
determine whether the classification is reasonable in light
of its purpose.   For this Court to refuse to make the de-
cision in this case allows a procedure to exist which

arguably has many aspects of involuntary servitude for some, while others of the same class are treated in a more enlightened way.[2]

---

[2] *Wilson* v. *Kelley*, 294 F. Supp. 1005, aff'd *per curiam*, 393 U. S. 266, is not determinative of the present case. The *Wilson* case, so far as material here, only held that work camps are not *per se* unconstitutional, saving, however, a prisoner's right to raise "the question of his own particular treatment as being a violation of his constitutional rights," 294 F. Supp., at 1012. No such question was reached in that case, as only a class action was involved.

For a recent account of the dark chapter resulting from the Court's decisions last century that the paramount duty to protect civil rights rested with the States, not the Federal Government, see Scott, Justice Bradley's Evolving Concept of the Fourteenth Amendment From the Slaughterhouse Cases to the Civil Rights Cases, 25 Rutgers L. Rev. 552 (1971).