ANN B. MAULE, AS GENERAL ADMINISTRATOR AND AS ADMINISTRATOR *AD PROSEQUENDUM* OF THE ESTATE OF HAMILTON B. MAULE, JR., AND ANN B. MAULE, PLAINTIFFS, v. CONDUIT AND FOUNDATION CORP., A FOREIGN CORPORATION AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, AND THE STATE OF NEW JERSEY, DEPARTMENT OF TRANSPORATION, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided July 2, 1973.

*Mr. Peter A. Benz* for plaintiffs.

*Miss Carol A. Ferentz* for defendant Conduit and Foundation Corp. (*Mr. John W. Taylor,* attorney).

*Mr. Nickolas F. Monteforte* for defendant State of New Jersey, Department of Transportation (*Mr. George F. Kugler,* Attorney General, attorney).

GASCOYNE, J. C. C., Temporarily Assigned. Plaintiff instituted a wrongful death action alleging that on August 31, 1971, at about 11:17 P.M., Hamilton B. Maule, Jr. (Maule), age 23, was operating his vehicle in a westerly direction on Route 46 in the vicinity of Edwards Road, Parsippany-Troy Hills, New Jersey. She further alleged that Conduit and Foundation Corporation (Conduit) was repairing Route 46 at this point and maintained the construction in such negligent manner as to cause the death of Maule.

By leave of court an amended complaint was filed joining the State of New Jersey and the Department of Transportation of the State of New Jersey, both of whom will hereinafter be referred to as the State. The State moved for summary judgment, contending that since the cause of action arose prior to July 1, 1972, the effective date of the

New Jersey Tort Claims Act (*N. J. S. A.* 59:1-1 *et seq.*), the doctrine of soverign immunity is applicable. Both plaintiff and Conduit contended that since the cause of action antidated *Willis v. Dept. of Conservation and Economic Development,* 55 *N. J.* 534 (1970), the State is liable to respond in tort. The court must then resolve whether the tort immunity is or is not applicable in the hiatus between *Willis* and July 1, 1972. Since there are no reported cases determining this problem, and since it is a recurring problem, it may be advisable to examine the situation in depth.

Over the years our courts have whittled away the doctrine of sovereign immunity as applied to political subdivisions, *Milstrey v. Hackensack,* 6 *N. J.* 400 (1951); *Kress v. Newark,* 8 *N. J.* 562 (1952); *Hartman v. Brigantine,* 42 *N. J. Super.* 247 (App. Div. 1956), aff'd 23 *N. J.* 530 (1957); *Schwartz v. Stockton,* 32 *N. J.* 141 (1960); *McAndrew v. Mularchuk,* 33 *N. J.* 172 (1960); *Peer v. Newark,* 71 *N. J. Super.* 12 (App. Div. 1961), certif. den. 36 *N. J.* 300 (1962); *Hayden v. Curley,* 34 *N. J.* 420 (1961); *Goldberg v. Housing Authority, Newark,* 38 *N. J.* 578 (1962); *Amelchenko v. Freehold,* 42 *N. J.* 541 (1964); *Titus v. Lindberg,* 49 *N. J.* 66 (1967); *B. W. King, Inc. v. West New York,* 49 *N. J.* 318 (1967); *Jackson v. Hankinson,* 51 *N. J.* 230 (1968); *Bergen v. Koppenal,* 52 *N. J.* 478 (1968); *Kent v. Hudson County,* 102 *N. J. Super.* 208 (App. Div. 1968), aff'd 53 *N. J.* 546 (1969), and to certain autonomous arms of the State, *Taylor v. New Jersey Highway Authority,* 22 *N. J.* 454 (1956). The judiciary steadfastly refused to accept tort litigation directly against the State. *Fitzgerald v. Palmer,* 47 *N. J.* 106 (1966). The shield against civil liability continued unabated until a chink was put in the armor by *P.T.&L. Constr. Co. v. Comm'r of Transportation,* 55 *N. J.* 341 (1970), wherein our Supreme Court held that immunity in contract liability should be abrogated. The State was held liable for contracts made by it even though the court recognized that an appropriation effecting such judgments would be the sole jurisdiction of the Legislature.

Chronologically, *Willis, supra,* followed. There an infant was injured by a bear which had been caged in a New Jersey State Park. The court said:

Unlike the situation in *Fitzgerald v. Palmer,* the claim now before us does invite consideration of the basic question of judicial abstention in tort matters, for here, according to the complaint, the State itself generated the risk of injury by caging a ferocious animal without suitable safeguards despite the manifest danger to persons the exhibit was intended to attract.

It is plainly unjust to refuse relief to persons injured by the wrongful conduct of the State. No one seems to defend that refusal as fair. There has been a steady movement away from immunity * * *. [at 537, 538]

In response to this judicial pronouncement the Legislature enacted *L.* 1970, *c.* 98 (*N. J. S. A.* 52:4A–1), which precluded civil liability not based on constitutional grounds until July 1, 1971. Subsequent litigation in the *P.T.&L.* case occurred and the trial court dismissed the case prior to decision on the merits, on the ground of the aforementioned legislation. The Supreme Court certified the matter before argument in the Appellate Division. In a letter to the court the Attorney General conceded that this interim legislation "was designed * * * to give both the executive and legislative branches the opportunity to study the problems resulting from the *P.T.&L.* and *Willis* decisions without any prejudice to parties who might, during the intervening period, continue to bring their claims before the Subcommittee on Claims," *P.T.&L. Constr. Co. v. Comm'r of Transportation,* 57 *N. J.* 439, 441 (1971). The court affirmed "without prejudice, however, to such further judicial proceedings by plaintiff as may become appropriate as a result of legislative action or in action before July 1, 1971" (at 441).

*N. J. S. A.* 52:4A–1 (*L.* 1970, *c.* 98 § 1), effective June 15, 1970, was amended by *L.* 1971, *c.* 187, § 1, effective June 2, 1971, precluding any action in tort or contract for recovery or money damages where the cause of action occurred prior to April 1, 1972. An additional amendment followed,

which prohibited suits where the cause of action occurred prior to July 1, 1972. The legislative course of action culminated in the passage of the New Jersey Tort Claims Act (*N. J. S. A.* 59:1–1 to 59:12–3) and the New Jersey Contractual Liability Act (*N. J. S. A.* 59:13–1 to 59:13–10).

It is with this legislative and judicial background that a determination of the problem at hand is undertaken, *i. e.,* will a cause of action arising subsequent to *Willis, supra* and prior to July 1, 1972 be covered by the Tort Claims Act? If it was not so intended, is the act unconstitutional because there is a breach of the equal protection of the law clause of the U. S. Constitution or the New Jersey Constitution.

The New Jersey Tort Claims Act represents the legislative response to *Willis.* The legislative intent is set forth in *N. J. S. A.* 59:1–2 as follows:

> The Legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand the Legislature recognizes that while *a private entrepreneur may readily be held liable for negligence within the chosen ambit of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done.* Consequently, it is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein. All of the provisions of this act should be construed with a view to carrying out the above legislative declaration. [Emphasis supplied]

Interestingly, the emphasized portion is almost verbatim the language used by the court in the *Fitzgerald* case, *supra;* portions also set forth the philosophy of the Supreme Court in reaching its decision in *Willis.* Thus, the Legislature has adopted as public policy the enunciations of our highest court.

Another portion of the act, *N. J. S. A.* 59:12–3, provides that the act shall not apply to the *Willis* case. When this section is read in combination with *N. J. S. A.* 59:14–4(a), which provides that the act shall become effective on July 1, 1972, there is only one conclusion — that the Legislature did

not intend to give recognition to causes of action arising prior to July 1, 1972.

That there is a vast difference between tort and contractual liability was recognized by the Supreme Court in the third *P. T. & L.* case, 60 *N. J.* 308 (1972), when it came on for a review as a result of the legislative enactment of *c.* 187 extending the 1970 statute to April 1, 1972. Plaintiff moved to restore the cause to the calendar and the court granted the motion. The court held that whether a state is suable within its own courts without legislative consent is a matter of state constitutional law, with due protection of constitutional guarantees of both the Federal and State Constitutions. The court went on to state:

Unlike claims in tort as to which the Legislature may understandably be troubled in deciding upon a substantive basis for State liability, there is no comparable difficulty when the claim rests upon an express contract. [at 315]

When the foregoing language is read with the following language in *Willis*:

But there are strong reasons why we should not accept other claims already in being. There are no appropriations to pay the obligations the court might declare, nor even, perhaps, to handle the caseload which may ensue. The executive branch will need time to prepare for the additional burden. Then, too, the Legislature may wish to require timely notice of claims to permit an opportunity to investigate. Or the Legislature may choose to fix a monetary limit on recoveries, or to exclude some category of damages, or to adopt a concept of liability different from that of the common law, or to entrust the whole matter to an administrative agency. Mindful as we must be that our dollar judgments will be merely declarations, dependent for their ultimate value upon what the Legislature is willing to do to satisfy them, it is appropriate to postpone the effective date to permit an expression of legislative will, rather than to embark at once upon this new course. Hence, except for the immediate case, the courts will not accept any tort claim arising before January 1, 1971. See *Oxford Consumer Discount Co. v. Stefanelli*, 104 *N. J. Super.* 512, 520–521 (App. Div. 1969), aff'd, 55 *N. J.* 489 (1970) ; *cf. Switz v. Tp. of Middletown*, 23 *N. J.* 580, 598 (1957). If the Legislature establishes an earlier date, we of course, will abide by that decision. [55 *N. J.* at 541]

it is manifest that the Supreme Court intended to leave the mechanics of setting up a means of recovery, as well as a date when recovery would be allowed, within the discretion of the Legislature.

Cognizance is also given to *Harris v. State of New Jersey,* 118 *N. J. Super.* 384 (App. Div. 1972, reversed on other grounds 61 *N. J.* 585 (1972)), wherein the court reversed the granting of a motion for summary judgment dismissing plaintiff's tort claim on the ground of sovereign immunity. The court held that the abrogation of the doctrine of sovereign immunity in *Willis* "was held to be not retroactive absent legislative fiat, and *was conditioned by a moratory period to enable the Legislature to act."* (at 389; emphasis supplied).

 The language used by Justice Proctor in *Egan v. Erie R. Co.,* 29 *N. J.* 243 (1959), wherein a statute limiting liability of a railroad was under attack, would seem to be applicable here:

Plaintiffs contend that the statute which reflects the common-law policy at the time of its enactment conflicts with the above doctrine and thus the statute should be reconstrued so as to conform with our present decisional law. However, to do so would be a judicial usurpation of the legislative function. There is no question that the Legislature, subject to constitutional limitations, may fix the State's policy as to rules of conduct which result in liability or nonliability. (Citations) In such circumstances it is the duty of the court to apply the legislative will notwithstanding that it may conflict with the court's own philosophy. *Baader v. Mascellino,* 116 *N. J. Eq.* 126 (E. & A. 1934). In the present instance the Legislature has solidified the common law in effect at the time of the enactment as it related to trespassers upon the rights of way of railroads. The declaration of a contrary rule on grounds of policy is a legislative rather than a judicial function. *Cf. Cohen v. Borough of Bradley Beach, supra* [135 *N. J. L.* 276]. That the courts have expanded the duties of landowners in other areas does not permit them to encroach upon a field where the Legislature has spoken. [at 252]

And so here, the court should not encroach in the legislative sphere where the Legislature has acted, absent a constitutional violation. It is therefore held that the action of the Legislature was reasonable, absent a violation of the equal protection of the law clause.

The burden which rests on one asserting that a given piece of legislation contravenes the equal protection clause is set forth in *Two Guys from Harrison, Inc. v. Furman,* 32 *N. J.* 199 (1960), where the court quoted with approval the following language of *N. J. Restaurant Ass'n, Inc. v. Holderman,* 24 *N. J.* 295, 300 (1957):

The burden of demonstrating that a statute contravenes the equal protection clause is extremely formidable, as is attested by the long trial of failure. In addition to the strong presumption of constitutionality with which all organic challenges are approached, one who assails a statute on this ground must contend with principles of unusual elasticity. It is easily stated that the classification (1) must not be palpably arbitrary or capricious, and (2) must have a rational basis in relation to the specific objective of the legislation. But the second proposition is qualified by limitations which compound the difficulties of one who assails the legislative decision. Thus it is not enough to demonstrate that the legislative objective might be more fully achieved by another, more expansive classification, for the Legislature may recognize degrees of harm and hit the evil where it is most felt. [Citations]. The Legislature may thus limit its action upon a decision to proceed cautiously, step by step, or because of practical exigencies, including administrative convenience and expense, [citations] or because of "some substantial consideration of public policy or convenience or the service of the general welfare." *DeMonaco v. Renton,* 18 *N. J.* 352, 360 (1955). Hence it may "stop short of those cases in which the harm to the few concerned is thought less important than the harm to the public that would ensue if the rule laid down were made mathematically exact." *Dominion Hotel, Inc. v. State of Arizona, supra* (249 *U. S.* [265] at p. 268, 39 S. Ct. [273] at p. 274, [63 L. Ed. 597]). * * * [at 218]

The court went on to hold that in applying these principles it was necessary to ascertain the evil sought to be remedied and then measure that against the reasonableness of the classification.

In *Sarner v. Union Tp.,* 55 *N. J. Super.* 523 (Law Div. 1959) it was held:

It has been said that the courts will not pass judgment upon the wisdom of the Legislature in enacting a law, but will only ascertain if the Legislature has kept within its powers. *State v. Garden State Racing Ass'n,* 136 *N. J. L.* 173 (E. & A. 1947). This case also holds that the Legislature had broad powers to classify and, so long

as the benefits derived and the burdens imposed bear alike upon every one within the class and the classification can be justified upon any reasonable theory, it cannot be declared a violation of any constitutional provision. But such classification must have some reasonable and just relation either to the general object of the legislation or to some substantial consideration of public policy or convenience or service to the general welfare. *Washington National Ins. Co. v. Board of Review*, 1 *N. J.* 545 (1949). It must not be illusory. Arbitrary selection can never be justified by calling it classification. The equal protection required by the Fourteenth Amendment forbids this. *Gulf, C. & S. F. R. Co. v. Ellis*, 165 *U. S.* 150, 17 *S. Ct.* 255, 41 *L. Ed.* 666 (1897). The Court in the *Washington National* case, supra, 1 *N. J.* at page 554, pointed out that care must be exercised that the efficacy of constitutional guaranties shall not be whittled away by indulging in unwarranted presumptions of a factual basis for the legislation.

While equal protection does not foreclose reasonable legislative classification, the classification must be non-discriminatory and bear a reasonable relationship to the general object of the legislation. *N. J. Restaurant Ass'n v. Holderman*, 24 *N. J.* 295 (1957) ; *Pierro v. Baxendale*, 20 *N. J.* 17 (1955) ; *De Monaco v. Renton*, 18 *N. J.* 352 (1955). [at 533, 534]

With these guidelines, an examination of the legislation is undertaken to determine whether the constitutional guarantee of equal protection of the law has been violated.

There can be no dispute that had the Legislature included all causes of actions arising after the *Willis* decision, that it had a right to do so. But does it necessarily follow that in failing to do so, did it keep within its powers, keeping in mind its broad powers to classify? As was noted above in the *N. J. Restaurant Ass'n* case, it is not sufficient to "demonstrate that the legislative objective might be more fully achieved by another, more expansive classification" and the Legislature may proceed" because of practical exigencies, including administrative convenience and expenses." These factors were recognized by the Supreme Court in *Willis* when it declared that it would not accept tort claims arising before January 1, 1971. Nor should the fact that the court established January 1, 1971 as the date on which it would accept claims suggest that this was a judicial mandate to the Legislature that any legislation would have to adopt this as

the date. It should be read only as indication by the Court that the Legislature should act, and if it failed to respond, then the court would act.

The classification, in view of the foregoing, is not "palpably unreasonable or capricious" and "does bear a reasonable relationship to the evil sought to be corrected." It treats all those within the same class equally and is non-discriminatory. The legislation therefore does no violence to the equal protection clause of either the Federal or State Constitutions.

The motion for summary judgment will therefore he granted, with counsel for the State to submit an appropriate order.