# MARCHANT *v.* PENNSYLVANIA RAILROAD COMPANY.

ERROR TO THE COURT OF COMMON PLEAS, NO. 3, FOR THE COUNTY OF PHILADELPHIA, STATE OF PENNSYLVANIA.

No. 221. Argued January 18, 19, 1894. — Decided May 14, 1894.

When a plaintiff below has the benefit of a full and fair trial in the several courts of his own State, whose jurisdiction he invokes, and where his rights are measured, not by laws made to affect him individually, but by general provisions of law applicable to all in like condition, even if he can be regarded as deprived of his property by an adverse result, the proceedings that so resulted were in " due process of law," as that phrase is used in the Fifth and the Fourteenth Amendments to the Constitution of the United States.

The leading cases touching the construction of that phrase in the Amendments reviewed.

The fact that a railroad company is held liable for damages suffered by a person by reason of the occupation of a public street in a city in front of his premises by an elevated track furnishes no ground for holding it liable to an owner on the other side of the same street but in a different part of it, by reason of the construction of a similar elevated track opposite to him but not on the public street.

The construction of an elevated railroad, under laws of the State, on private land abutting on a public street in a city, gives to the owner of land on the opposite side of the street no claim to recover consequential damages for injury inflicted upon him thereby.

EDWARD D. MARCHANT brought an action in the Court of Common Pleas, No. 3, for the county of Philadelphia, State of Pennsylvania, at September term, 1884, against the Pennsylvania Railroad Company, a corporation of Pennsylvania, for the recovery of the damages occasioned to him in the erection by the defendant company of its elevated road on property belonging to the railroad company and abutting on the south side of Filbert Street, in the city of Philadelphia, in front of plaintiff's property, which was situated on the north side of Filbert Street, a public highway fifty-one feet in width. No portion of the plaintiff's property was actually taken or occupied by the railroad company, nor was Filbert

Street, where it extends in front of the plaintiff's lot, occupied by the structure of the railroad company. But at another portion of Filbert Street, not far from plaintiff's lot, the bed of the street was and is occupied by the railroad. The plaintiff alleged in his declaration that by the erection and maintenance of the elevated railroad, and the continuous passage of passenger and freight cars thereon, driven by steam locomotives, he was injured in the possession, use, and enjoyment of his property, and that his dwelling and business house on said lot was rendered unfit for habitation, and was greatly depreciated in value. The trial resulted in a verdict and judgment for the plaintiff in the sum of $4980. The cause was taken on error to the Supreme Court of Pennsylvania, where the judgment was reversed, the majority of the court holding that the plaintiff had no legal cause of action. The plaintiff having died, pending the litigation, his administratrix was substituted, and thereupon sued out a writ of error to this court.

*Mr. M. Hampton Todd* for plaintiff in error.

I. The Supreme Court of Pennsylvania, in reversing the judgment which plaintiff had recovered as compensation for the damage done to his property by the construction of defendant's elevated railroad in front thereof, and holding that he had no cause of action for the recovery of such damages, deprived him of his property without due process of law. *Case of Phil. & Trenton Railroad,* 6 Wharton, 25; *S. C.* 36 Am. Dec. 202; *O'Connor* v. *Pittsburgh,* 18 Penn. St. 187; *Monongahela Navigation Co.* v. *Coons,* 6 W. & S. 101; *Schuylkill Navigation Co.* v. *Thoburn,* 7 S. & R. 411; *Pusey* v. *Allegheny,* 98 Penn. St. 522; *Reading* v. *Althouse,* 93 Penn. St. 400; *New Brighton* v. *United Presbyterian Church,* 96 Penn. St. 331; *Pennsylvania Railroad* v. *Duncan,* 111 Penn. St. 352; *Pennsylvania Ins. Co.* v. *Schuylkill Valley Railroad,* 151 Penn. St. 334; *Jones* v. *Erie & Wyoming Railroad,* 151 Penn. St. 30; *Pottstown Gas Co.* v. *Murphy,* 39 Penn. St. 257; *Pittsburgh, Fort Wayne &c. Railway* v. *Gilleland,* 56 Penn. St. 445; *Western Pennsylvania Railroad* v. *Hill,* 56 Penn.

St. 460; *Columbia Bridge Co.* v. *Geisse,* 35 N. J. Law, 562; *Radcliff* v. *Brooklyn,* 4 N. Y. 195; *S. C.* 53 Am. Dec. 357; *Pumpelly* v. *Green Bay Co.,* 13 Wall. 166; *Baltimore & Potomac Railroad* v. *Fifth Baptist Church,* 108 U. S. 317; *Struthers* v. *Dunkirk &c. Railway,* 87 Penn. St. 282.

II. The Supreme Court of Pennsylvania denied to the plaintiff the equal protection of the laws given by the Fourteenth Amendment by holding that the defendant is liable to make compensation for the damage done to abutting owners on Filbert Street by the occupation of the bed of the street for its railroad, and is not liable to the owners of property abutting on the north side of Filbert Street, including plaintiff, where its railroad is on property abutting on the *south* side of Filbert Street, there being no difference in principle between the two classes of cases.

This clause is intended, we think, to be supplemental to the clause providing for due process of law. If we construe it correctly, it is intended that after one has appeared in a duly constituted court such person shall have no unjust and arbitrary discrimination made against him in the administration of law, but that he shall be entitled to have the law ruled in his case as it is in that of other citizens similarly situated.

In *Caldwell* v. *Texas,* 137 U. S. 692, it is ruled:

"No State can deprive particular persons or classes of persons of equal and impartial justice under the law without violating the provisions of the Fourteenth Amendment to the Constitution.

"Due process of law within the meaning of the Constitution is secured where the laws operate on all alike, and no one is subject to partial or arbitrary exercise of the powers of government."

We submit that in this case it is an unjust and arbitrary exercise of the powers of government for the Supreme Court of Pennsylvania under the same constitutional guarantees to allow compensation to be recovered by Mr. Duncan and that class of abutting owners and denied to the plaintiff, when there is, as we think we have heretofore shown, no difference in principle between the two classes of cases.

That is, while the Supreme Court of Pennsylvania have endeavored to set up a distinction between the cases, there is no real distinction in law between them. The rules of law that give one class a right to compensation for the injuries sustained, apply with equal force to the other. The attempted distinction founded on the occupancy of the bed of Filbert Street is a distinction which affects alone the *quantum* of damage and not the *right* of action.

*Mr. Wayne Mac Veagh,* (with whom was *Mr. A. H. Wintersteen* on the brief,) for defendant in error.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

The Pennsylvania Railroad Company, a corporation under the laws of the State of Pennsylvania, and invested with the privilege of taking private property for its corporate use, erected in May, 1881, and has since maintained a viaduct or elevated roadway and railroad thereon, along the south side of Filbert Street in the city of Philadelphia. On the opposite or north side of Filbert Street the plaintiff below was the owner of a lot or parcel of land, whereon was erected a large four-story building, at that time occupied as a dwelling and business house. The elevated railroad did not occupy any portion of the plaintiff's land, nor did it trench upon Filbert Street where it extends in front of the plaintiff's property, which is situated on Filbert between Seventeenth and Eighteenth streets, but where the elevated road, in its course westward, reaches Twentieth Street, it trends to the north and is supported over the cartway of Filbert Street by iron pillars having their foundations in that street inside the curb line, and thus extends westwardly to the Schuylkill River. Opposite the plaintiff's lot the railroad structure occupies land owned by the company.

The plaintiff, by his action in the Court of Common Pleas, sought to recover for injuries caused to his property by the smoke, dust, noise, and vibration arising from the use of the

engines and cars, the necessary consequence and incidents of the operations of a steam railway.

The trial court refused the defendant's prayer that "the jury should be instructed that the defendant, under its charter and supplements in evidence, had full lawful authority to create and operate the Filbert Street extension or branch described in the declaration without incurring any liability by reason thereof for consequential damages to the property of the plaintiff, the uncontradicted evidence being that none of the said property was taken by the defendant, but that the entire width of Filbert Street intervenes between the railroad of the defendant and the nearest point thereto of the property of the plaintiff," and instructed the jury that the only question for them to determine was the amount of depreciation in value of the plaintiff's property caused by the operation of the railroad, and that in estimating the damages they should consider the value of the property before and its value after the injury was inflicted, and allow the difference. The plaintiff recovered a verdict and judgment. This judgment was reversed by the Supreme Court of Pennsylvania, because of the action of the trial court in refusing to grant the defendant's prayer for instruction, and, in effect, because the plaintiff had no cause of action. By the specifications of error contained in this record we are asked to reverse the judgment of the Supreme Court of Pennsylvania because the plaintiff in error was thereby deprived of her property without compensation; because she was thereby deprived of the equal protection of the laws; and because she was thereby deprived of her property without due process of law.

In reaching the conclusion that the plaintiff, under the admitted facts in the case, had no legal cause of action, the Supreme Court of Pennsylvania was called upon to construe the laws and constitution of the State. The plaintiff pointed to the 10th section of article 1 of the constitution, which provided that " private property shall not be taken or applied to public use, without authority of law, and without just compensation being first made or secured;" and to the 8th section of article 16, which contains the following terms: " Municipal

and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured, or destroyed by the construction or enlargement of their works, highways, or improvements, which compensation shall be paid or secured before such taking, injury, or destruction."

The first proposition asserted by the plaintiff, that her private property has been taken, from her without just compensation having been first made or secured, involves certain questions of fact. Was the plaintiff the owner of private property, and was such property taken, injured, or destroyed by a corporation invested with the privilege of taking private property for public use? The title of the plaintiff to the property affected was not disputed, nor that the railroad company was a corporation invested with the privilege of taking private property for public use. But it was adjudged by the Supreme Court of Pennsylvania that the acts of the defendant which were complained of did not, under the laws and constitution of that State, constitute a taking, an injury, or a destruction of the plaintiff's property.

We are not authorized to inquire into the grounds and reasons upon which the Supreme Court of Pennsylvania proceeded in its construction of the statutes and constitution of that State, and if this record presented no other question except errors alleged to have been committed by that court in its construction of its domestic laws, we should be obliged to hold, as has been often held in like cases, that we have no jurisdiction to review the judgment of the state court, and we should have to dismiss this writ of error for that reason.

But we are urged to sustain and exercise our jurisdiction in this case because it is said that the plaintiff's property was taken "without due process of law," and because the plaintiff was denied "the equal protection of the laws," and these propositions are said to present Federal questions arising under the Fourteenth Amendment of the Constitution of the United States, to which our jurisdiction extends.

It is sufficient for us in the present case to say that, even if the plaintiff could be regarded as having been deprived of

her property, the proceedings that so resulted were in "due process of law."

The plaintiff below had the benefit of a full and fair trial in the several courts of her own State, whose jurisdiction was invoked by herself. In those courts her rights were measured, not by laws made to affect her individually, but by general provisions of law applicable to all those in like condition.

To justify this position it is not necessary to enter into an examination of the origin, meaning, and scope of the phrase "due process of law," as found in the Fifth and Fourteenth Amendments. That has been done so often and so thoroughly in previous cases that all we need do is to cite a few of them.

*Davidson* v. *New Orleans*, 96 U. S. 97, came to this court on a writ of error to the Supreme Court of the State of Louisiana. There was state legislation, under which an assessment had been laid on real estate belonging to Davidson, for draining swamp lands in the parish of Orleans. Objections were raised in the state courts, including alleged departures from the requirements of the statute under which the proceedings were had, and objections based on the claim that Davidson was, by the proceedings, deprived of his property without due process of law. This court briefly disposed of the objections based on questions of method and detail and disregard of statutory directions by saying that such questions were not regulated or controlled by the Constitution of the United States. In respect to the contention that the assessment in question deprived the plaintiff in error of his property without due process of law, the court said, after deprecating any attempt to define what it is for a State to deprive a person of life, liberty, or property without process of law, in terms which would cover every exercise of power thus forbidden to the State, "whenever by the laws of a State, or by state authority, a tax, assessment, servitude, or other burden is imposed upon property for the public use, whether it be for the whole State or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, with such notice to the person or such proceeding in

regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections. . . . It is not possible to hold that a party has, without due process of law, been deprived of his property, when, as regards the issues affecting it, he has, by the laws of the State, a fair trial in a court of justice, according to the modes of proceeding in such a case. . . . The party complaining here appeared and had a full and fair hearing in the court of the first instance, and afterwards in the Supreme Court. If this be not due process of law, then the words can have no definite meaning as used in the Constitution."

In *Hager* v. *Reclamation District*, 111 U. S. 701, 708, is found the following definition of a phrase : " It is sufficient to observe here, that by ' due process ' is meant one which, following the forms of law, is appropriate to the case, and just to the parties to be affected. It must be pursued in the ordinary mode prescribed by the law; it must be adapted to the end to be attained; and wherever it is necessary for the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought. The clause in question, therefore, means that there can be no proceeding against life, liberty, or property, which may result in the deprivation of either, without the observance of those general rules established in our system of jurisprudence for the security of private rights."

*Missouri Pacific Railway Co.* v. *Humes*, 115 U. S. 520, was a case where it was contended that, by an act of the State of Missouri requiring railroad companies to erect and maintain fences and affixing penalties for disobedience, a railroad company previously chartered was deprived of property without due process of law, and it was said: " If the laws enacted by a State be within the legitimate sphere of legislative power, and their enforcement be attended with the observance of those general rules which our system of jurisprudence prescribes for the security of private rights, the harshness, injustice, and oppressive character of such laws will

not invalidate them as affecting life, liberty, or property without due process of law." Without encumbering this opinion with citations of the language used, we refer to the following cases: *The Case of Kemmler*, 136 U. S. 436; *Kaukauna Co.* v. *Green Bay Canal*, 142 U. S. 254; *Hallinger* v. *Davis*, 146 U. S. 314; *Yesler* v. *Harbor Commissioners*, 146 U. S. 646.

The plaintiff in error further contends that, by the proceedings in the courts of Pennsylvania, she was denied the equal protection of the laws. We understand this proposition to be based on the allegation that those suitors whose property abutted on Filbert Street between the Schuylkill River and Twentieth Street, where the elevated road actually occupies the territory of Filbert Street, were allowed by the Pennsylvania courts to recover damages for the injury thus occasioned to their property, while the plaintiff, and those in like case, whose property abutted on Filbert Street where it was not occupied by the railroad structure, which was erected on the opposite side of the street on land belonging to the railroad company, were not permitted to recover. The diversity of result in the two classes of cases is supposed to show that equal protection of the laws was not afforded to the unsuccessful litigants. It is not clear that the facts are so presented as to authorize us to consider this question. Neither in the plaintiff's declaration, in the instructions prayed for, nor in the charge of the trial court, do we perceive any finding or admission that there were suitors, holding property abutting on Filbert Street, who were held entitled to recover for damages occasioned by the elevated railroad. However, the third assignment of error is as follows: " The Supreme Court of Pennsylvania erred in deciding that the present cause was different in principle from the case of *Pennsylvania Railroad Company* v. *Duncan*, 111 Penn. St. 352, and 132 U. S. 75. The effect of said decision is that, under the same constitutional guarantees, it gives to one person a right to compensation for property damaged by the defendant in the exercise of its power of eminent domain, and denies it to another; and as in this instance the decision is

against the plaintiff's right to compensation for the injury to her property by the defendant, she is thereby deprived of the equal protection of the laws." The counsel of defendant in error, in their printed brief, make no point that the facts are not shown by this record, but discuss the question on its merits. We are referred in the printed briefs to our own case of *Pennsylvania Railroad Co.* v. *Miller*, 132 U. S. 76, in the report of which it appears that one Duncan, whose property abutted on Filbert Street, where that street was occupied by the elevated railroad in question, was permitted by the state courts to recover for damages suffered by having been deprived of access to and the free use of Filbert Street.

Conceding, for the sake of the argument, that the facts are as alleged by the plaintiff in error, we are unable to see any merit in the contention that the Supreme Court of Pennsylvania, in distinguishing between the case of those who, like Duncan, were shut off from access to and use of the street by the construction thereon of the elevated railroad, and the case of those who suffered, not from the construction of the railroad on the street on which their property abutted, but from the injuries consequential on the operation of the railroad, as situated on defendant's own property, thereby deprived the plaintiff of the equal protection of the laws. The two classes of complainants differed in the critical particular that one class suffered direct and immediate damage from the construction of the railroad in such a way as to exclude them from the use of their accustomed highway, and the other class suffered damages which were consequential on the use by the defendant company of their franchise on their own property. The question thus raised is within the case of *Missouri* v. *Lewis*, 101 U. S. 22, where it was said that "the clause in question means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or classes in the same place and under like circumstances." So in *Hayes* v. *Missouri*, 120 U. S. 68, where by a statute of the State of Missouri it was provided that, in capital cases, in cities having a population of over 100,000 inhabitants, the State shall be allowed fifteen peremptory challenges, while

elsewhere in the State it is allowed only eight peremptory challenges, it was held that such a distinction did not deny to a person accused and tried for murder in a city containing over 100,000 inhabitants the equal protection of the laws enjoined by the Fourteenth Amendment, and in the course of the discussion it was said: "The Fourteenth Amendment to the Constitution of the United States does not prohibit legislation which is limited either in the objects to which it is directed or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed. As we said in *Barbier* v. *Connolly*, 113 U. S. 27, speaking of the Fourteenth Amendment: ' Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment.'"

It should also be observed that the plaintiff does not complain that, by any legislative enactment, she has been denied rights granted to others, but she attributes error to the judgment of the Supreme Court of Pennsylvania in construing that provision of the constitution of the State which gives a remedy for property injured by the construction of a railroad, as not extending the remedy to embrace property injured by the lawful operation of the railroad. It is not pretended that, by such a construction of the law, the plaintiff has been deprived of any right previously enjoyed. The scope of the remedy added by the constitution of 1874 to those previously possessed by persons whose property is affected by the erection of a public work is declared by the court not to embrace the case of damages purely consequential.

In so holding, it does not appear to us that the Supreme Court of Pennsylvania has either deprived the plaintiff of property without due process of law, or denied her the equal protection of the law, and its judgment is accordingly

*Affirmed.*