## Commonwealth of Pennsylvania v. Hiram Y. Kaufman, Appellant.

*Indictment—Preferment by order of court.*

An indictment may be preferred in pursuance of an order of court made upon petition of the district attorney and private counsel of the prosecutor and without notice to the defendant.

*Criminal law—Acts of 1860 and 1863—Guardian as trustee.*

The word " trustee " as employed in section 113 of the crimes Act of March 31, 1860, P. L. 382, is made by the Act of April 22, 1863, P. L. 531, to embrace a guardian.

*Fraudulent intent—Conversion of funds by guardian—Evidence.*

Conversion by a guardian of a trust fund to other use than that of the cestui que trust is prima facie fraudulent and the guardian's failure to pay on settlement of his account is evidence of conversion. It matters not when the fraudulent intent was conceived; as cumulative evidence of intent it is competent for the commonwealth to show a fraudulent purpose in the assumption of the trust.

Argued Nov. 14, 1898. Appeal, No. 149, Oct. T., 1896, by defendant, from judgment of Q. S. Berks Co., Sept. Sess., 1896, on verdict of guilty. Before RICE, P. J., ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed. OR-LADY, J., dissents.

Indictment for embezzlement. Before ENDLICH, J.

It appears from the record and evidence that the defendant was tried on an indictment charging embezzlement as guardian. In May, 1896, defendant filed his account as guardian. Upon adjudication the orphans' court ascertained a balance due to each of the children in the sum of $948.40. This amount was not at that time paid over to the minor children. On July 3, 1896, after adjudication of the guardian account, the surety on

the bond had defendant arrested for embezzlement, the informa-
tion made before the committing magistrate charging defendant
with embezzling $900 from James E. Hill.   An indictment was
presented to the grand jury. and a true bill found charging de-
fendant with appropriating money with intent to defraud James
E. Hill out of the sum of $940.   This indictment appears to
have been mislaid and on September 8, 1897, the district attor-
ney presented his petition to the court of quarter sessions ask-
ing leave to present a new bill of indictment to the grand jury
on the ground that the former bill had been mislaid or lost;
permission being granted by the court a new indictment was
placed before the grand jury charging the defendant with ap-
propriation of money with intent to cheat and defraud James
E. Hill and James Ruth who was the surety upon Mr. Kauf-
man's guardian bond.   The first bill was found on September 17,
1896, and the case was finally called for trial on December 14,
1897.   The case was set down for trial at every succeeding
session of the court but continued from time to time until De-
cember sessions, 1897, recognizance for appearance being re-
newed, it being alleged on behalf of the commonwealth that
such recognizances do not form part of the record owing to the
fact that they were in book form and could not readily be de-
tached.

Verdict of guilty and sentence thereon.   Defendant appealed.

*Errors assigned.* among others were (1) to the admission of
testimony of James Ruth, the prosecutor, that the defendant
had said that his brother, F. Y. Kaufman, would become co-
surety with the prosecutor, the said James Ruth, upon the
guardian bond.   (2) In admitting evidence as set forth in a
statement filed in the court below, which statement is as fol-
lows: "The commonwealth, alleging the existence on the de-
fendant's part of bad faith and an intention to defraud his ward,
beginning with the inception of the guardianship and continu-
ing throughout its duration, and having, as tending to support
said allegation, offered to show, that, in inducing the prose-
cutor to go upon his bond as guardian of James E. Hill,
defendant falsely represented to said prosecutor that his, de-
fendant's brother, was also to be a surety upon said bond, said
offer was objected to by defendant; whereupon the court ad

mitted the same and granted an exception to the defendant."
(3–5) In admitting evidence of the confession of judgment by
defendant to his brother F. Y. Kaufman on July 6, 1896, upon
which execution was issued and personal property of defendant
sold.    (6) In admitting the evidence as set forth in the state-
ment filed by the court below as follows : " The commonwealth
having in support of the same allegation offered to show that
after defendant's default had been established in the orphans'
court, he confessed certain judgments to his brother, upon which
executions were immediately issued and all his property suffi-
cient for the satisfaction of his liability as guardian of James
E. Hill swept away.    Said offer was objected to by the defend-
ant, whereupon the court admitted the same and granted an
exception to the defendant. "    (7) In charging the jury as fol-
lows : "If his acts as judged by his intention to be gathered
from the evidence were consistent with an honest purpose or
not clearly inconsistent with such, then he is entitled to an ac-
quittal, no matter how injurious to his ward they subsequently
turned out to be, but in this connection the jury is to remem-
ber that a reckless negligence in handling of trust funds so
glaring as to be inconsistent with an honest purpose, may be
evidence of intention to defraud. "    (8) In entering an order per-
mitting the district attorney to lay a new bill of indictment
before the grand jury.    Notice of this order to be given de-
fendant.    (9) In overruling motion to quash the indictment.

*John F. Smith* and *W. K. Stevens*, of *Stevens & Stevens*, with
them *Edwin Sassaman*, for appellant.—The court below erred
in admitting testimony showing the insolvency of the defend-
ant eight years after the alleged misappropriation of funds.

Ground must first be laid implicating the defendant in the
case under trial; and unless sufficient evidence of this has in
the opinion of the judge been received, all evidence of other
offenses to prove intent must be excluded.    For it is a viola-
tion of the fundamental sanctions of our law to admit evidence
that the defendant committed one offense in order to prove he
committed another.

The extraneous crime cannot be put in evidence without
proof that the defendant was concerned in its commission.

The court below improperly stated the law in charging the

jury that a reckless negligence in handling of trust funds, so glaring as to be inconsistent with an honest purpose, may be evidence of an intention to defraud.

The action of the court in permitting the district attorney to send a second bill of indictment against the defendant was clearly illegal, and not within the power of the court.

The power of the district attorney to send a second bill before the grand jury when the first bill has been ignored is not questioned. In Rowand v. Com., 82 Pa. 405, this practice was sustained, but the present case is wholly different. The proper practice, it is submitted, would have been for the district attorney to have a new information charging the crime contained in the second bill of indictment. This was the practice adopted in the case of Rosenberger v. Com., 118 Pa. 77. The new bill prepared cannot in any sense be admitted as a substitute for the original bill, for the reason that it charged a different crime.

To sustain this practice would be to make a dangerous precedent: Mount v. State of Ohio, 14 Ohio, 306.

The indictment found September 13, 1897, cannot be sustained as an extraordinary criminal prosecution. It does not fall under any of the three classes of cases in which a prosecution can be instituted without previous information, etc. The first of the three classes as pointed out by Judge KING in the case of Lloyd v. Carpenter, 3 Clark, 188, is when criminal courts of their own motion direct the investigation of matter of general import. The second class is where the attorney general (now district attorney) ex officio prefers an indictment before a grand jury without a previous binding over or commitment of the accused. The third class is where the prosecution is a presentment, properly speaking, the notice taken by a grand jury of any offense from their own knowledge or observation without any bill of indictment being laid before them at the suit of the commonwealth.

Treating the act of 1863 as an amendment to and extension of the 124th section of the act of 1860, the effect is that of a mandate on the part of the legislature to the courts to add to the meaning of the word trustee as defined in the act of 1860, a further and additional meaning, namely, that of a guardian.

It is well settled that the legislature cannot pass an expository

act to compel the courts for the future to adopt a peculiar construction of a previously enacted statute. Com. v. Warwick, 172 Pa. 140.

The legal interpretation of the word " trustee " as contained in the act of assembly is well understood and well defined, and, to use the language of Mr. Justice SHARSWOOD in Haley v. Philadelphia, 68 Pa. 45, " it would be monstrous to maintain that where the word and intention of the act were so plain that no court had ever been applied to for the purpose of declaring their meaning, it was therefore in the power of the legislature by a retrospective law to put a construction upon them contrary to their obvious letter and spirit."

The defendant was entitled to be discharged under the act of March 31, 1860, commonly known as the two term rule.

The record in this case discloses the fact that the indictment was originally found in September session, 1896, and that the case was brought to trial in December session, 1897. Nowhere either in the minutes of the court or in the record does it appear that any continuance was had upon the application of the defendant. The court could have supplied the record if there was any error in it, but, not having done so, the record itself imports verity and cannot be contradicted : Douglass v. Wickwire, 19 Conn. 488.

*Adam B. Rieser*, district attorney, for appellee.—The objection to the admission of the evidence complained of by appellants is untenable because the defendant went on the witness stand and testified as to his financial standing both prior and subsequent to his appointment as guardian. Especially did they introduce testimony in chief as to his financial troubles after his appointment.

A further examination of the defendant's testimony discloses the fact that he had appropriated the said trust fund to his own use from the time he received it, and that he never had any of it invested as guardian or trustee. He testified that after he had received the funds he had unincumbered real estate, and therefore it became very important to show to the jury what judgments were confessed by him to other creditors, and what judgments were obtained by suits, so that the jury could find whether he had any fraudulent intentions in not securing the

said trust funds which he knew that he had appropriated to his own use from the beginning.

The crime charged in the two bills of indictment is the same, even if the language is somewhat different. If there was any difference, the advantage was with the defendant, for the reason that the new bill stated the details of the misappropriation more specifically than the first. It did him no injury and deprived him of none of his rights.

The right of the district attorney by and with the consent of the court, to present a new bill of indictment, where one has been lost or purloined, cannot be seriously denied: Com. v. Freeman, 1 Pa. C. C. R. 392.

It is well settled in this state, that, where no harm is done the defendant, technicalities are no longer much regarded: Brown v. Com., 78 Pa. 122; Com. v. Nicely, 130 Pa. 261.

The tenth and seventeenth assignments of error are entirely without merit. That the indictment charges an indictable offense and that the defendant was not entitled to be discharged under what is commonly known as the two-term rule was decided by the Supreme Court in Wentzel's Appeal, 160 Pa. 252.

OPINION BY SMITH, J., January 18, 1899:

The defendant's contention that the indictment was irregularly found is rebutted by the third reason given in the motion to quash, viz: " The indictment was preferred in pursuance of an order of court, made upon petition of the district attorney and private counsel of the prosecutor, and without notice to the defendant." It is well settled that an indictment may be laid before the grand jury in this manner, the procedure being under the supervision of the court: Com. v. Green, 126 Pa. 531; Com. v. Swallow, 8 Pa. Superior Ct. 539; Rosenberger v. Com., 118 Pa. 77. Notice to the defendant, at this stage of the proceeding, is not required, though it appears in fact to have been given in the present case. Moreover, the indictment was based on an information, hearing and binding over. The previous finding of an indictment on the same information was no bar to the subsequent indictment. Had both been in the district attorney's hands the defendant could have been tried on either. Should he now be tried on the first, the record of his conviction on the second will sustain a plea of autrefois convict.

The claim of a right to discharge under the "two-term rule" is without foundation.   The delay in bringing the case to trial appears to have been due wholly to the defendant.

It cannot be doubted that an indictable offense is charged. The indictment alleges that the defendant was duly appointed guardian of James E. Hill, a minor; that on the adjudication of his account as guardian he had in his hands, due said minor, $948.40 ; and that he did fraudulently, unlawfully make way with, embezzle and convert to his own use and purpose the said sum of $948.40, with interest, to cheat and defraud the said minor, and James Ruth, the surety on his bond as guardian. This charges an offense substantially in the language of the act of March 31, 1860, section 113, which provides that "If any person, being a trustee of any property for the benefit, either wholly or partially of some other person, or for any public or charitable purpose, shall, with intent to defraud, convert or appropriate the same, or any part thereof, to or for his own use or purpose, or the use or benefit of any other person, or shall with intent aforesaid, otherwise dispose of or destroy such property, or any part thereof, he shall be guilty of a misdemeanor."   Section 124 of the same act, in defining the meaning to be given to the word "trustee," while embracing executors and administrators, omits guardians.   The supplemental act of April 22, 1863, however, provides that this section "shall also extend to and include any guardian or guardians of a minor child or children appointed by the orphans' court of the respective counties, in the same manner as executors, administrators and assignees."   The contention that this act is judicial in character, in prescribing the construction to be given to the act of 1860, cannot be sustained.   The act of 1863 and section 124 of the act of 1860, are alike in character ; they fix the scope of the word "trusts," as employed in section 113, and define the sense in which it is used.   That this word embraces a guardian has been judicially determined: Wentzel's Appeal, 160 Pa. 252; Ex parte Blumer, 86 Pa. 371.

The evidence shows, without contradiction, that the defendant made no distinction between his own money and that which he is charged with having embezzled.   Part of the latter he used in paying his own debt, and another portion was lost through an investment in his own name.   It further shows

that a few days after the settlement of his account he confessed a judgment to his brother, on which an execution was issued and all his personal property sold, while his real estate had become incumbered to at least its full value, leaving nothing from which the amount due his ward could be collected. It is also alleged by the commonwealth, but denied by the defendant, that to induce the prosecutor to become surety on his bond as guardian he falsely represented that his brother was also to be a surety. It is contended by the commonwealth that an intent to defraud was formed by the defendant on his appointment as guardian, and the evidence as to these matters was offered in support of this view, as showing bad faith throughout. It is not material, however, when the intent was formed, nor how long it was entertained. Conversion of the trust fund to any other use than that of the cestui que trust is prima facie fraudulent, and the trustee's failure to pay on settlement of his account is evidence of such conversion. In the present case there is no evidence to rebut the presumption of a fraudulent conversion arising from default of payment. As cumulative evidence of intent, it was competent for the commonwealth to show a fraudulent purpose in the assumption of the trust. The evidence on this point was certainly admissible; its weight was for the jury to determine; and if it fell short of proving the alleged intent it did the defendant no harm.

The seventh specification is without merit. The charge, including the portion here assigned for error, is a careful, accurate and lucid statement of the law as applied to the case in hand; and in its references to the evidence it is eminently fair to the defendant.

Nothing in the assignments requires further discussion. The record showing no error, the judgment is affirmed.

ORLADY, J., dissents.