Opinion by
Morrison,
The defendant was indicted under section 113 of the Act of March 31, 1860, P. L. 382 (see page 410): “If any person, being a trustee for the benefit, either wholly or partially, of some other person, or for any public or charitable purpose, shall, with intent to defraud, convert or appropriate the same, or any part thereof, to or for his own use or purpose, or the use or benefit of any other person, or shall, with intent aforesaid, otherwise dispose of or destroy such property, or any part thereof, he shall be guilty of a misdemeanor.”
The defendant qualified as executor of the last will and testament of H. B. Meliclc and gave bond in the sum of $80,000, with the Fidelity and Deposit Company of Maryland as his surety, and proceeded to the execution of his trust. It is alleged that about $82,000 came into his custody as such trustee and that he unlawfully converted and appropriated about $12,000 of this sum to his own use and neglected and refused for several years to pay the same over to the persons lawfully entitled thereto.
The indictment contained five counts. The defendant’s counsel moved to quash the indictment, but the learned court refused the motion, except as to the first count, which was quashed. Each count charges substantially the same crime. It is hard for us to see on what ground the first count was quashed. It is equally difficult to understand why the indictment was drawn with five counts. One well-drawn count, *457 under section 113, would have been sufficient, as well as more concise and satisfactory pleading. However, each count charged the same crime and it cannot be said that the multiplicity of them seriously injured the defendant.
The counsel then moved the court to compel the commonwealth to elect to try the case on one count of the indictment. This motion was refused, but the court did compel the commonwealth and the defendant to go to trial on the fourth and fifth counts. There is no material difference in these two counts, except the fifth alleges a refusal to pay over on demand the property alleged to have been embezzled. But the 113th section does not make that embezzlement. If it did, then the count might be bad as charging separate crimes in one count: Com. v. Mentzer, 162 Pa. 646. But section 65 of the act of March 31, 1860, under which the defendant was indicted in that case, makes failing to pay over on demand, embezzlement. Not so, however, under section 113, where the crime is to convert or appropriate with intent to defraud. It was, therefore, within the discretion of the court below, to compel the defendant to go to trial on the fourth and fifth counts. They practically charged the same offense and the defendant was not harmed by this action of the court. We consider the indictment sufficient.
The averment of refusal to pay on demand in the fifth count may be regarded as surplusage. But the commonwealth might prove demand and refusal to pay over as evidence of .conversion to defendant’s own use with intent to defraud, which is the real crime charged against the defendant: Commonwealth v. Beale, 19 Pa. Superior Ct. 434.
In Hutchison v. Commonwealth, 82 Pa. 472, there was an indictment with five counts. There was a motion to quash which was overruled, and the Supreme Court held that the first, third and fourth counts were bad and ought to have been quashed and that there was no evidence to support the second count. The defendant was convicted of larceny as bailee and the Supreme Court affirmed the judgment because the fifth count was good. That case holds that it is a fraud per se for a bailee to convert to his own use the property com *458 mitted to his care. If a trustee converts trust property to his own use, it is surely prima facie evidence of intent to defraud, and evidence of demand and refusal to pay over is evidence of fraudulent intent. The first and second assignments raise the questions we have been discussing and they are not sustained.
The third and fourth assignments raise the question of the refusal of the court to permit the defendant to prove that he made a full statement of his financial condition, the property he possessed, the liens thereon, etc., for the purpose of negativing the intent to defraud: also to prove the value of defendant’s real estate with a view to rebutting his intent to defraud by showing that he had some properties and equities in real estate worth considerable money, etc.
The theory of defendant’s counsel seems to be that the defendant could rebut the intent to defraud by showing possession and ownership of property of sufficient value to repay the sum alleged to have been embezzled. We understand the position to be that if a trustee unlawfully converts and appropriates to his own use $10,000 of the trust fund and neglects and refuses to restore the same, for a long time after demand and after it became his duty to pay the same over, he may rebut the evidence of fraudulent intent by proving that during all the time he was worth, say $50,000. We do not believe this is the law in Pennsylvania. We have been referred to no satisfactory authority to that effect, nor do we know of any.
The counsel cites: “Evidence of the pecuniary condition of the defendant charged with embezzlement immediately prior to the time and during the time the offense is alleged to have been committed is competent:” 6 Am. & Eng. Ency. of Law, 503. The above citation is from the case of the United States v. Camp, 10 Pac. Repr. 226. We have already said that we are not prepared to convict the court below of error in excluding such evidence.
United States v. Camp, 10 Pac. Repr. 226, was a case in which the defendant was a trustee of United States money at Boise City, Idaho. He took charge of said office on June 1, 1883, and *459 was last in charge of the same April 14,-1885. On the latter date there should have been a balance of $24,119.78 in his possession of government money which he had received. On the last mentioned date defendant went east and remained absent until about May, 1885. During his absence the office and funds thereof were in charge of R. Heurschkel, assistant assayer under the defendant. When the defendant left for the east and turned the funds over to Heurschkel, neither, counted the money in the presence of the other, but defendant testified that he counted it himself and that there was in the neighborhood of $24,000. Heurschkel testified that he did not count it; supposed it was all right and reported the full amount on hand for sixteen days thereafter and until he received orders from Washington to count the same; that upon the receipt of said order, he counted the money in the presence of witnesses and found the funds short in the amount charged in the indictment, to wit: $12,306.36. Camp was indicted and tried for the embezzlement. The theory of the defendant was that Heurschkel having equal opportunity to embezzle the funds with the defendant, it was impossible to say that the defendant was guilty and he should have been acquitted.
The report of the case shows that at the trial the United States put in evidence certain papers, receipts and documents of defendant’s showing his financial circumstances and his expenditures at the time he assumed such position as assayer and immediately prior to and during the time of his holding said position. The admission of this evidence was assigned for error by the defendant, and the court held that it was competent. It is very apparent that it was offered for the purpose of convincing the jury, that Camp was probably the man who embezzled the money and not Heurschkel. We may add that Camp was convicted and sentenced and the conviction affirmed. Thus it appears that the evidence was admitted for precisely the opposite purpose from that contended for by the defendant in the present case.
We need not commit ourselves to the soundness of the ruling in that case. It is sufficient to say that it does not sustain the contention of the learned counsel for defendant, in the case at *460 bar, in any degree whatever. The argument in favor of the third and fourth assignments loses sight of the fact that the present defendant unlawfully converted the trust funds to his own use and neglected to restore or pay over the funds for years after he ought to have done so. The evidence of the commonwealth clearly established the facts necessary to his conviction, and he could not procure an acquittal by showing that he had made a full statement of his financial condition, and the character and value of his property, long after the offense had been committed. His whole defense amounted to but little more, if any, than an admission of his guilt. If he had pleaded guilty, it would not have condoned his offense nor have rebutted the presumption of fraudulent intent.
In Commonwealth v. Kaufman, 9 Pa. Superior Ct. 310, we held: “Conversion of the trust fund to any other use than that of the cestui que trust is prima facie fraudulent and the trustee’s failure to pay on settlement of his account is evidence of such conversion. In the ■ present case there is no evidence to rebut the presumption of a fraudulent conversion arising from default of payment.” As to the case at bar, We say broadly that the defendant’s offers, which give rise to the third and fourth assignments, were not legally sufficient or competent to rebut the presumption of a fraudulent conversion, arising from the commonwealth’s evidence, and the court rightly rejected the offers. The third and fourth assignments are not sustained.
The fifth, sixth, seventh, eighth, ninth and tenth assignments allege error in excerpts from the charge of the court. A careful reading of the charge as a whole, as well as an examination of the excerpts quoted in said assignments, fails to convince us of serious error in the charge. We consider it adequate and impartial. The said assignments are not sustained.
The eleventh assignment is to the answer of the court to the defendant’s sixth point, to wit: “Evidence of good character is positive evidence, and may of itself by the creation of a reasonable doubt produce an acquittal.” The answer is: “Evidence of previous good character is to be regarded *461 as substantive proof, and, as such, evidence upon which a reasonable doubt of guilt may rest. It should be observed, however, that there comes a time in the life of every criminal when he commits his first offense and when he leaves the high plane upon which walks the upright, law-abiding citizen.” In view of the clear rule established by the Supreme Court and followed by this court for instructing a jury as to the effect of evidence of good character, we feel at liberty to say that the above quoted answer is not above criticism, and it would have been wiser and safer to have followed the rule found in the following and many other cases that might be cited: Com. v. Eckerd, 174 Pa. 137; Com. v. Harmon, 199 Pa. 521; Com. v. Dingman, 26 Pa. Superior Ct. 615.
However, upon careful consideration, we do not think the answer to the sixth point (eleventh assignment) requires us to reverse the judgment. While it may be rather close to the border line, we are not convinced that it misled the jury. Upon the whole record, we find that the defendant had a legal trial and reversible error is not disclosed by any of the assignments and they are all dismissed.
The judgment is affirmed and the record is remitted to the court below with instructions to have the judgment carried into execution.