# Commonwealth *v.* Levi, Appellant.

*Constitutional law—Equal protection of the laws—Fourteenth amendment—Constitution of the United States.*

1. The fourteenth amendment of the constitution of the United States does not prohibit legislation which is limited either in the objects to which it is directed or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions, both in privileges conferred and in the liabilities imposed. Class legislation, discriminating against some and favoring others is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the prohibition of the amendment.

*Constitutional law—Fourteenth amendment—Criminal law—Embezzlement—Statute of limitations—Trustees—Executors.*

2. The Act of May 23, 1889, P. L. 48, which increased to five years the statutory period within which an indictment against trustees and executors for embezzlement may be found, is not in contravention of that portion of the fourteenth amendment of the constitution of the United States which provides that no state shall deny to any person the equal protection of the law; and this is the case although the word "assignees" does not appear in the act of 1889, as it appeared in secs. 113 and 124 of the Act of March 31, 1860, P. L. 382, relating to embezzlement by trustees.

*Criminal law—Embezzlement—Executors and administrators—Evidence.*

3. On the trial of an indictment of an executor for embezzlement, the inventory and appraisement of the decedent's estate filed by the defendant in the office of the register of wills, is admissible in evidence; as is also proceedings in the orphans' court and Supreme Court as proof of what property of the estate the defendant had in his hands and which he should legally be required to pay to the distributees.

4. Such evidence does not prevent the defendant from showing if he can, that he had lost the money in any manner which did not involve malfeasance on his part, or that he had through an honest mistake paid the money to parties who were not legally entitled to receive it.

*Evidence—Stenographer—Testimony taken in prior proceedings.*

5. Where an executor and other parties interested in a decedent's estate agree that the proceedings in the orphans' court shall be taken

by a stenographer, the notes of testimony thus taken may be used in a subsequent trial of the executor for embezzlement, when the stenographer testifies that the notes were taken by him, promptly reduced to writing, and that the testimony offered in evidence was full and accurate, although he had no personal recollection of the testimony at the time of the criminal trial.

*Criminal law—Embezzlement—Executors and administrators—Evidence.*

6. On the trial of an executor for embezzlement where the commonwealth produced in evidence the record of certain proceedings in the orphans' court, the defendant has a right to have read to the jury such portions of the proceedings as may be favorable to him, and if the court refuses to permit him this privilege, he has ground for complaint; but if the court after refusing subsequently permits the proceedings to be read, the refusal at first is no ground for an assignment of error.

7. On such a trial where a witness testifies fully as to the defendant's actions in carrying on a business belonging to the decedent, and how he had disposed of the goods of the estate, it is proper for the court to refuse to permit the witness to be asked by the defendant as to the general business conditions of the city in which the business was conducted at the time the goods were being sold.

8. In such a case it is proper to exclude an offer by the defendant to show what the defendant's father, the testator, had said to him during his lifetime, as to his intention with regard to the business and what he intended to direct by his will, it appearing that the deceased had made a written will, differing in its terms from that which the defendant offered to prove.

*Criminal law—Embezzlement—Executors and administrators—Conversion—Payment.*

9. Conversion by the trustee, of a trust to any other use than that of the cestui que trust is prima facie fraudulent, and the failure of the trustee to pay on settlement of his account is evidence of conversion.

Argued April 18, 1910. Appeal, No. 16, Feb. T., 1910, by defendant, from judgment of Q. S. Dec. Sessions, 1909, No. 44, on verdict of guilty in case of Commonwealth v. David L. Levi. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Indictment for embezzlement. Before HART, P. J.

From the record it appeared that the defendant, David

L. Levi, was the son and executor of Michael Levi who died on April 9, 1906, a resident of Williamsport. The testator owned a clothing business in Williamsport, which the defendant continued as executor. It was in connection with the winding up of this business that the transactions occurred for which he was indicted. During the progress of the trial there were various rulings on evidence and instructions the substance of which are stated in the opinion of the Superior Court.

Verdict of guilty, on which the defendant was sentenced to pay a fine of $500, and undergo imprisonment in the county jail for one year.

*Errors assigned* were (1–27) various rulings and instructions.

*Max L. Mitchell,* for appellant.—The provisions of the fourteenth amendment in regard to equal protection of the laws secures "Exemption from any greater burdens and charges than such as are equally imposed upon all others under like circumstances:" Barbier v. Connolly, 113 U. S. 27 (5 Sup. Ct. Repr. 357); Marchant v. Penna. Railroad Co., 153 U. S. 380 (14 Sup. Ct. Repr. 894).

The proceedings in the orphans' court were not evidence: Moses v. Bradley, 3 Whart. 272; Hutchinson v. Bank, 41 Pa. 42; Morch v. Raubitschek, 159 Pa. 559; State v. Bradneck, 37 Atl. Repr. 492.

*Herbert T. Ames,* with him *Ira F. Smith, A. R. Jackson, Candor & Munson, Thos. A. Hammond,* of *Ames & Hammond* and *M. C. Rhone,* for appellee.—Due process of law and equal protection of the laws are secured, if the laws operate on all alike and do not subject the individual to an arbitrary exercise of the powers of government: Duncan v. State of Missouri, 152 U. S. 377 (14 Sup. Ct. Repr. 570); Lowe v. State of Kansas, 163 U. S. 81 (16 Sup. Ct. Repr. 1031); Tinsley v. Anderson, 171 U. S. 101 (18 Sup. Ct. Repr. 805).

The proceedings of the orphans' court were admissible: Com. v. Kaufman, 9 Pa. Superior Ct. 310; Com. v. Beale, 19 Pa. Superior Ct. 434; Com. v. King, 35 Pa. Superior Ct. 454; Aitkin v. Young, 12 Pa. 15; Coursin v. Ins. Co., 46 Pa. 323; Woodward v. Garey, 42 Legal Int. 490.

OPINION BY PORTER, J., October 10, 1910:

The defendant was indicted for and convicted of the crime of fraudulent embezzlement, as executor of the will of Michael Levi, deceased. The defendant moved to quash the indictment upon the ground that it had not been found within two years after the commission of the alleged offense and, in support of this motion, contended that the Act of May 23, 1889, P. L. 48, which increased to five years the statutory period within which an indictment for the offense here charged may be found, is in contravention of that portion of the fourteenth amendment of the constitution of the United States which provides that no state shall deny to any person the equal protection of the law. The court below overruled this motion to quash, which action is the subject of the first specification of error. Counsel for the appellant argues that the period of limitation within which the crime of embezzlement by all trustees must be prosecuted was, prior to the act of 1889, two years; that the act of 1889 extended to five years the period of limitation within which executors and certain other classes of trustees might be prosecuted for fraudulent embezzlement, while it left the limitation as to certain other trustees remain, as formerly, two years, and that this distinction comes within the prohibition of the fourteenth amendment, and denies to all executors the equal protection of the law. The indictment is founded upon sec. 113 of the Act of March 31, 1860, P. L. 382, defining and providing for the punishment of fraudulent embezzlement by trustees. The word "trustee," as used in sec. 113 of the act of 1860, is given a well-defined meaning by sec. 124 of the same statute, viz.: "The word 'trustee' herein shall mean a trustee on some express trust created by deed,

will or instrument in writing, and shall also include the heir, devisee and personal representative of any such trustee, and all executors, administrators and assignees." The meaning of the word "trustee," as used and defined in the sections above referred to was, by the Act of April 22, 1863, P. L. 531, extended to "include any guardian or guardians of a minor child or children appointed by the orphans' court of the respective counties in the same manner as executors, administrators and assignees." The limitation within which the crime of fraudulent embezzlement by executors and all the other classes of trustees embraced by the legislation above referred to was, by sec. 77 of the Act of March 31, 1860, P. L. 427, fixed at two years. The Act of April 23, 1889, P. L. 48, provided, "That all indictments for embezzlement by administrators, executors, guardians and trustees may be brought or exhibited at any time within five years, from the final decree of the court adjudicating the final accounts of the said trustee." The argument of counsel for appellant is that because the word "assignees" had been used, in sec. 124 of the act of 1860, in defining the classes which come within the meaning of the word "trustee," as used in sec. 113 of the same statute, and the word "assignees" is not again used in the act of 1889 fixing at five years the limitation for prosecutions for embezzlement; that, therefore, the limitation within which prosecutions for embezzlement by assignees must be brought remains two years and that this distinction involves, as to executors and the other classes of trustees within the operation of the act of 1889, a denial of the equal protection of the laws.

We do not deem it necessary, in this case, to consider whether the word "trustees," as used in the act of April 23, 1889, is to be held to have the meaning which had been expressly given to it by sec. 124 of the act of March 31, 1860, and so construed as to embrace assignees for the benefit of creditors within the classes of trustees liable to prosecution for embezzlement within five years after the adjudication of their final accounts. If it be assumed that

VOL. XLIV—17

executors are within the provisions of the act of 1889 while assignees for the benefit of creditors are not then, all that the legislation involves is a division of trustees into two classes, one, those who under the law are charged with the administration of the estates of the dead and the guardianship of the property of infants; and the other, those who have charge of property of the living, holding it in trust for creditors, who may be supposed to be competent to look after their own interests and demand a prompt accounting. The fourteenth amendment of the constitution of the United States does not prohibit legislation which is limited either in the objects to which it is directed or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions, both in privileges conferred and in the liabilities imposed. Class legislation, discriminating against some and favoring others is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the prohibition of the amendment. "Due process of law and the equal protection of the laws are secured if the laws operate on all alike, under like conditions and like circumstances and do not subject the individual to an arbitrary exercise of the powers of government." "The right to equal protection of the laws is not denied by a state court when it is apparent that the same law or course of procedure would be applied to any other person in the state under similar circumstances and conditions:" Duncan v. Missouri, 152 U. S. 377; Marchant v. Pennsylvania Railroad Co., 153 U. S. 380; Barbier v. Connolly, 113 U. S. 217; Tinsley v. Anderson, 171 U. S. 101, and cases cited in Commonwealth v. Emmers, 33 Pa. Superior Ct. 151. The first assignment of error is dismissed.

The Act of February 24, 1834, sec. 2, P. L. 73, imposes upon executors the duty of causing an inventory and appraisement of the decedent's estate to be made and "to

return the same into the office of the proper registrar."
When the conduct of an executor is the subject of judicial
investigation it is certainly proper to use the very evi-
dence which the law has expressly required him to fur-
nish and file in a public office showing what property of
the estate of the decedent has come into his hands.  The
inventory and appraisement in this case showed upon its
face that it had been made at the request of the defendant
and was filed by him, in the office to which he was by law
required to return it; it was his act and it was properly ad-
mitted as evidence.  The second specification of error is
without merit.

The act of March 31, 1860, sec. 113, provides that:
"If any person, being a trustee of any property for the
benefit, either wholly or partially, of some other person,
or for any public or charitable purpose, shall, with intent
to defraud, convert or appropriate the same, or any part
thereof, to or for his own use or purpose, or the use or
benefit of any other person, or shall, with intent afore-
said otherwise dispose of or destroy such property, or
part thereof, he shall be guilty of a misdemeanor."  Sec-
tion 124 of the statute enacts that, "the word 'property'
shall include every description of real and personal prop-
erty, moneys, debts and legacies, . . . . and shall also
include not only such property as may have been the
original subject of a trust, but any property in which the
same may have been converted, and the proceeds thereof."
Under the provisions of these sections it is material to
prove that there was property in the hands of the trustee,
for which he was liable to account in the manner provided
by law, and it is equally material to produce evidence as
to the person or persons, or the public or charitable use,
having a beneficial interest in the property.  When an
executor named in a will assumes the duties of the trust
he submits himself, under the law of Pennsylvania, to
the jurisdiction of the orphans' court.  The property of
the estate is to be disposed of according to the provisions
of the will, but the orphans' court, as to personal property,

has exclusive jurisdiction to determine the meaning of the will, subject to review by the proper appellate court. The orphans' court has the exclusive jurisdiction to pass upon the account of the executor and determine the amount of the funds of the estate in his hands and distribute those funds to the parties thereunto legally entitled. The law has not conferred upon the orphans' court jurisdiction to determine whether an executor has been guilty of the misdemeanor of fraudulent embezzlement, as defined by the statute under which this appellant was indicted, but it has conferred upon that court jurisdiction to ascertain what property of the estate is in the hands of the executor and which he is legally liable to pay and to determine the parties legally entitled to receive the property. When an executor has filed his account and a question arises as to the amount of the funds in his hands for distribution, the executor, both as executor and an individual, and every creditor who presents a claim are parties to the proceeding and have a right to be heard. The final decree of the court in such a proceeding is certainly evidence as to what property of the estate is, or legally ought to be, in the hands of the executor and that the parties to whom the court awards the fund are those legally entitled to receive it. This appellant filed his account as executor to which exceptions were filed, the orphans' court of Lycoming county then proceeded in a regular manner to pass upon the account and the exceptions, which proceeding resulted in a decree finding that there was in the hands of the executor, the property of the estate, the sum of $23,851.34 and made distribution of that amount to the several creditors of the estate. The defendant appealed from this decree to the Supreme Court of Pennsylvania which tribunal affirmed the decree as to this defendant, but upon an appeal by one of the creditors directed that the decree be modified as to the distribution. The orphans' court, upon the return of the record entered a final decree in accordance with the decision of the Supreme Court. This decree did not determine that the defendant had

been guilty of fraudulent embezzlement, but it did finally settle the rights of property in the fund. We are of opinion that the record of the proceedings in the orphans' court and the Supreme Court were properly admitted by the court below as evidence of what property of the estate the defendant had in his hands and which he should legally be required to pay to the distributees. A judgment of a court having jurisdiction of the parties and the subject-matter is always evidence of the fact that such a judgment has been given and of the legal consequences which result from that fact: Dorrell v. State, 83 Ind. 357; Aitkin's Heirs v. Young, 12 Pa. 15; Coursin v. Pennsylvania Insurance Company, 46 Pa. 323; Commonwealth v. Lundberg, 18 Phila. 482. This did not prevent the appellant from showing, if he could, that he had lost the money in any manner which did not involve malfeasance upon his part, or that he had through an honest mistake paid the money to parties who were not legally entitled to receive it. The court, in charging the jury, confined the effect of this evidence within proper limits, in language which the jury could not have misunderstood. The assignments of error from three to nine inclusive, eleven, twelve, twenty, twenty-one and twenty-two are dismissed.

The tenth specification of error is based on an exception to the admission of the notes of testimony of this defendant upon the hearing of the exceptions to his account in the orphans' court. The objection was not that the evidence formerly given by this defendant could not be used against him here, but as to the manner in which his former testimony was to be proved in the present trial. The notes of testimony had been taken by a stenographer. The preliminary evidence established that the stenographer had taken the notes of testimony at the proceeding in the orphans' court under an agreement of the parties that he should so take it made at the time. The stenographer testified that he had taken the testimony as it was delivered, and that the notes of the testimony were

full and accurate; that they were made by him at the time the testimony was delivered and that he had now no personal recollection of the testimony. When the stenographer undertook to take the testimony in pursuance of an agreement of the parties, including this defendant, he assumed a duty arising out of that business relation which required him to take the notes stenographically and promptly reduce the testimony to writing, making a full and accurate statement of all the witness said. The stenographer testified that in pursuance of this duty he promptly made, at the time of the transaction, the full and accurate notes of the testimony which were offered in evidence. Was this written statement properly admitted as evidence of what the defendant had testified to in the former proceeding? The modern doctrine upon this question, as gathered from a large number of authorities, may be thus stated: When the written statement is made at the time of the transaction, in the discharge of some public duty, or of some duty arising out of the business relation of the witness with others, and with the knowledge and concurrence of the party to be charged, and if the recollection of the facts has passed from the mind of the person who made the statement and he is produced as a witness and testifies that the statement written by him at the time of the occurrence was true and correct, the written statement may be received as the best evidence: Vicksburg & Meridan Railroad Company v. O'Brien, 119 U. S. 99; State v. Harmon, 70 Kansas, 476; Petty v. State, 76 Arkansas, 515; State v. Woolridge, 45 Oreg. 389; 1 Wigmore on Evidence, secs. 734–738; 2 Wigmore on Evidence, sec. 1330; 3 Wigmore on Evidence, sec. 1669; and in harmony with these authorities are Miles v. O'Hara, 4 Binney, 108; Lightner v. Wike, 4 S. & R. 203; Cornell v. Green, 10 S. & R. 14; Chess v. Chess, 17 S. & R. 409; Farmers' & Mechanics' Bank v. Boraef, 1 Rawle, 152. The evidence with regard to these notes of testimony warranted their admission in evidence, and the tenth specification of error is overruled.

The thirteenth, fourteenth and fifteenth specifications of error offend against rule XVI of this court, in that the testimony admitted under the exceptions, respectively, is not quoted in the specifications, which must for this reason be disregarded.

The sixteenth and seventeenth specifications of error complain of the action of the court in refusing to permit defendant's counsel to read to the jury certain parts of the record of the proceedings in the orphans' court. The record was in evidence, having been offered by the commonwealth, and if it contained anything favorable to the defendant he had the right to call attention to it. Had these rulings of the court been persisted in a serious question would be presented, but the court subsequently, in good time, withdrew from its position and said to counsel for the defendant, "The auditor's report is in evidence and has been put in evidence by the commonwealth. It can be made use of by counsel for the defendant for any purpose for which it is relevant." And again, "The counsel for defendant may read the whole report to the jury if he so desires. The report has been offered in evidence and it can be sent out with the jury, if counsel for the defendant desires it." The specifications are, therefore, without merit.

The witness Clara R. Auerbach, who had been employed as cashier and bookkeeper by the defendant in conducting the business, testified fully as to how the defendant, as executor, had carried on the business at the clothing store in disposing of the property of the estate of Michael Levi, deceased. She had testified fully as to what goods were in the store, what had been bought and placed in the store by the defendant, what had been sold and the various amounts received from said sales, as to all the receipts and all the expenditures and every detail as to how the business had been carried on and the results of its operation. Having thus testified the defendant attempted to go clear outside of the inquiry as to how he had disposed of the goods of the estate and introduce tes-

timony as to general business conditions in the city of Williamsport, and the witness was asked this question: "Q. What was the business situation, generally, was business generally good in Williamsport?" The commonwealth objected to this question and the court sustained the objection. The objection was properly sustained; evidence as to general business conditions in the city of Williamsport would have been immaterial and irrelevant, and to have admitted the testimony would have opened wide the door for the introduction of conflicting opinions as to a business situation which had nothing to do with the matter to be investigated in this case.

The offer to prove by the defendant what his father, the testator, had said to him during his lifetime, as to his intention with regard to the business and what he intended to direct by his will, was properly rejected. Michael Levi, deceased, had, in fact, made a written will and that written instrument constituted the terms of the trust which this defendant had voluntarily undertaken to execute. The admission of the testimony offered would have amounted to an attempt to prove by parole a will different from that which the testator had executed, and make a new will. The nineteenth specification of error is dismissed.

Conversion, by the trustee, of a trust fund to any other use than that of the cestui que trust is prima facie fraudulent, and the failure of the trustee to pay on settlement of his account is evidence of conversion: Commonwealth v. Kaufman, 9 Pa. Superior Ct. 310; Commonwealth v. Beale, 19 Pa. Superior Ct. 434; Commonwealth v. King, 35 Pa. Superior Ct. 454. That part of the charge upon which the twenty-third, twenty-fourth and twenty-fifth specifications of error are founded was in entire harmony with the rule of evidence above stated and those specifications of error are overruled.

This defendant had failed to pay the trust funds to the parties entitled thereto upon the final settlement of his account, and there was evidence in the case amply suffi-

cient to warrant the finding that he had fraudulently converted and appropriated the funds of the estate to the use and benefit of certain of his own relatives who had no claims upon the fund whatever. The case was for the jury, the request of the defendant for binding instructions was properly refused and the twenty-sixth specification of error is dismissed. The third request of the defendant for instructions was properly qualified by the court below. Had the point been affirmed without qualification, it would have amounted to an instruction that if the defendant believed he was dealing lawfully with the property of the estate, he must be acquitted. Ignorance of the law excuses no one. The answer of the court to this point instructed the jury that if they believed from the evidence that the acts of the defendant "were consistent with an honest purpose or were not inconsistent with an honest purpose, no matter how injurious to the estate, they subsequently turned out to be, their verdict must be for the defendant." The point might properly have been refused, the answer was as favorable to the defendant as he had any right to require, and the twenty-seventh specification of error is dismissed.

The judgment is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by said court committed until he comply with that part of the sentence which had not been performed at the time this appeal was made a supersedeas.